# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| **BEST MEDICAL INTERNATIONAL, INC., et al.,** | |
| *Plaintiffs,* | |
| **v.** | **Case no. 1:10cv988 (LOG/TRJ)** |
| **WELLS FARGO INC, NA, as successor in interest to WACHOVIA BANK, N.A., et al.,** | |
| *Defendants.* | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

Defendant, Wells Fargo Bank, N.A. ("Wells Fargo" or the "Bank"), incorrectly named in the Complaint as Wells Fargo Inc., NA,[1] and J. Kent Thompson, by counsel, hereby submit the following as their memorandum in support of their Motion to Dismiss.

## INTRODUCTION

Plaintiffs' Complaint is a desperate effort to divert Wells Fargo from its enforcement and collection of substantial judgments it obtained in state court arising out of Plaintiffs' default under various commercial loans and lines of credit.  Plaintiffs Best Medical International, Inc. ("Best Medical"), Huestis Machine Corp. ("Huestis"), Best Industries, Inc. ("Best Industries") and Gunston Hall Realty, Inc. ("Gunston Hall") and Krishnan Suthanthiran are borrowers and guarantors of defaulted commercial debt owed to Wells Fargo in excess of $12 million dollars.  After the credit facilities went into default, Plaintiffs sought forbearance from Wells Fargo from exercising its rights under the parties' loan documents.  Wells Fargo agreed to forbear

---

[1] Plaintiffs named "Wells Fargo Inc., N.A., as successor in interest to Wachovia Bank, N.A." as the defendant.  There is no such legal entity.  The proper party defendant is Wells Fargo Bank, N.A., successor-by-merger to Wachovia Bank, National Association.

temporarily from exercising its right to take enforcement and collection action with respect to the defaulted loans.  Plaintiffs and Wells Fargo, both represented by counsel in the negotiation and execution process, signed a Waiver and Amendment Agreement, dated July 31, 2009.  The Waiver and Amendment Agreement extended the maturity date for the various credit facilities and iterated new covenants and obligations, such as requiring Plaintiffs, among other things, to continue to make monthly interest payments and provide additional collateral.   In that Agreement, Plaintiffs signed broad waivers and releases in which they knowingly and voluntarily waived any and all defenses and claims relating or arising or connected with their Obligations and the Loan Documents.[2]  By the terms of the Agreement, the Extension Period expired January 1, 2010, at which time all of the loans became due and payable in full.  Wells Fargo thereafter refused to further forbear from exercising its default rights.  On June 30, 2010, pursuant to its rights under the Agreement and Loan Documents, Wells Fargo obtained separate Confessions of Judgment in the Circuit Court of Fairfax County against (i) Best Industries and Gunston Hall; and (ii) Suthanthiran.   After being served with the Judgments, Plaintiffs filed motions to have the Confessions of Judgment set aside and simultaneously filed the underlying Complaint in the Circuit Court of Fairfax County.  Wells Fargo removed the Complaint to this Court.

    Plaintiffs contend that Wells Fargo "forced" them to enter into loan documents with "onerous" loan terms and engaged in national origin discrimination against them by failing to renew or extend the commercial loans and lines of credit when they became due and payable in full.  The Complaint purports to advance a theory that a lender is legally obligated to renew and

---

[2] "Obligations" is a defined term in the Agreement, and includes "all of the Obligors' obligations to pay when due any debts, principal, interest, expenses and other amounts any Obligor owes Lender now or later, whether in under this Agreement, the Credit Facilities, the Loan Documents or otherwise, . . ." (Compl., Ex. 1, at 5).

extend credit facilities even though the loans are in default, millions of dollars are owed to the bank, and the economy is in sharp recession. The Complaint similarly posits that upon default, a bank cannot exercise its rights, agreed to by the parties, against the borrower for its failure to meet its contractual obligations because of the parties' longstanding lending relationship and the ethnicity of its CEO. These illogical theories underpin the claims – violation of the Virginia Equal Credit Opportunity Act ("Virginia ECOA") (Count I); fraud and/or constructive fraud (Count II); equitable estoppel (Count III); and breach of contract/duty of good faith and fair dealing (Count IV) – Plaintiffs purport to allege in their Complaint. Even if these theories were plausible, Plaintiffs have failed to allege facts to support the causes of action.

Plaintiffs' Virginia ECOA claim is preposterous. Plaintiffs assert that Defendants violated the Virginia ECOA by imposing onerous requirements in the loan documents and/or Waiver and Amendment Agreement. Plaintiffs have waived and released any right to assert that the Waiver and Amendment Agreement, guaranty agreements or any other obligation is "onerous" or was agreed to under coercion. Furthermore, Plaintiffs have alleged no facts that make the assertion that Wells Fargo discriminated against these commercial borrowers and guarantors on the basis of racial and/or national origin discrimination even remotely plausible.

The fraud claim fail as a matter of law because there are no facts pleaded identifying any misrepresentations made by Defendants to Plaintiffs, either prior to the execution of the Waiver and Amendment Agreement or in the post-default period. It is simply not reasonable in the midst of the current deep recession for Plaintiffs, in default of loan obligations in excess of $12 million dollars, to believe that the commercial loans would be further extended or renewed simply because a Wells Fargo executive testified before Congress that lending would be available to "creditworthy" borrowers and the parties had a long lending relationship.

The equitable estoppel fails as a matter of law.  Equitable estoppel is not an affirmative cause of action. Even if it could be, Plaintiffs have failed to articulate why the Court should apply the doctrine of equitable estoppel here.  Similarly, the breach of implied covenant of good faith and fair dealing claim fail as a matter of law.  No such cause of action is recognized in Virginia.  There simply can be no question that this litigation was initiated for the improper purpose of harassment and delaying Wells Fargo's ability to execute and collect on judgments it rightfully obtained.

Finally, Plaintiffs' naming of J. Kent Thompson as an individual defendant is sanctionable under Fed. R. Civ. P. 11.  Mr. Thompson is a career Bank officer whom Plaintiffs named in the Complaint for improper purposes.  Mr. Thompson is not alleged to have taken any conduct outside the scope of his employment.  There are no specific acts of discrimination identified and no fraudulent misrepresentations are alleged to have been made by Mr. Thompson.  Mr. Thompson appears to have been named for the sole purpose of thwarting diversity jurisdiction.[3]  There is no reasonable basis for recovery against him, let alone the assertion of a plausible claim, and he should be dismissed with prejudice and sanctions awarded.[4]

Because Plaintiffs' Complaint fails to state a claim, this Court should grant Defendants' motion to dismiss and dismiss Plaintiffs' Complaint in its entirety and with prejudice.

---

[3] Plaintiffs' desire to avoid federal court is also evidenced by their assertion of violation of the Virginia Equal Credit Opportunity Act, instead of the federal Equal Credit Opportunity Act, which is the more typical consumer credit claim, even in Virginia.  Because Mr. Thompson is a nominal party and/or has been fraudulently joined, his citizenship can be disregarded for diversity purposes.

[4] Counsel for Wells Fargo wrote counsel for Plaintiffs on August 25, 2010, stating that Mr. Thompson had been added as a defendant for an improper purpose and requesting that he be dismissed. Counsel for Plaintiffs responded by email that they would consider the request after discovery.  *See* Letter dated August 25, 2010, and email response dated August 27, 2010, attached as Exhibit 1.  These Plaintiffs are not entitled to a fishing expedition.  As this Court well knows, the gates of discovery are not open to plaintiffs who have failed to state a plausible claim. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 260 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1950).

## BACKGROUND

Wells Fargo and its predecessor, Wachovia Bank, National Association, have a commercial banking relationship with Plaintiffs, Best Medical International Inc., Huestis Machine Corp., Best Industries, Inc., and Gunston Hall Realty, Inc. (Compl. ¶ 11). Defendant, Krishnan Suthanthiran is the sole owner, sole shareholder, and chief executive officer of Best Medical, Huestis, Gunston Hall, and Best Industries. (*Id.* ¶ 5). Over various periods of time, Wells Fargo provided Plaintiffs with term loans and lines of credit. (*Id.* ¶ 11). Most recently, Wells Fargo extended (1) a term loan to Huestis for $5 million; (2) a term loan of $2 million to Huestis; (3) a line of credit to Gunston Hall Realty for $5 million; and (4) a line of credit to Best Medical International for $5 million (collectively, the "credit facilities"). (*Id.* ¶ 12). On or about May 8, 2009, Wells Fargo informed the borrowers that one or more events of defaults or defaults had occurred under the credit facilities. (Compl., Ex. 1, at 2). The borrowers requested that Wells Fargo waive the existing events of default in order to provide the borrowers and guarantors time to refinance and repay the credit facilities. (*Id.*). As part of their workout, the parties, on July 31, 2009, entered into the Waiver and Amendment Agreement, a copy of which is attached to the Complaint as Exhibit 1. In conjunction with the Waiver and Amendment Agreement, Plaintiffs entered into guaranty of payment agreements in which they guaranteed repayment of the credit facilities. (Compl., Ex. 1, at 5). According to the Waiver and Amendment Agreement, Plaintiffs agreed that the obligations under the credit facilities would be due and payable in full upon expiration of the Waiver and Amendment Agreement. (*Id.*, Ex. 1, at 8).

The Waiver and Amendment Agreement expired on January 1, 2010, at which time the loan obligations were not paid in full. (Compl. ¶ 17; *Id.*, Ex. 1, at 8). The parties were not able to agree on terms for renewal or further extension of the credit facilities. (*See* Compl. ¶ 17). On

June 30, 2010, Wells Fargo exercised its right under the Guaranty Agreements to confess judgment in the Circuit Court of Fairfax County.  (*Id.* ¶¶ 22).[5]  On August 3, 2010, Plaintiffs filed motions to set aside the Confessions of Judgments in the Circuit Court of Fairfax County, copies of which are attached as Exhibit 3.  Plaintiffs simultaneously filed the present Complaint and proceeded to effect service of process.

On August 30, 2010, Defendants timely filed their Notice of Removal.

## ARGUMENT

### I.  LEGAL STANDARD

A motion to dismiss tests the sufficiency of the claimant's initial pleading and does not resolve contests surrounding the facts or the merits of a claim.  *See, e.g., Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  Although the district court may draw all reasonable inferences in favor of the plaintiff, *see Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), it "need not accept the legal conclusions drawn from the facts, and [it] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quotations omitted); *accord Botkin v. Fisher*, No. 5:08CV00058, 2009 U.S. Dist LEXIS 24554, *20 (W.D. Va. Mar. 25, 2009) ("[A] court is 'not required to accept unwarranted deductions of fact when ruling on a Rule 12(b)(6) motion.'") (citations omitted).

"To survive a Rule 12(b)(6) motion," the complaint's "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'"  *Demetry v. Lasko Prods. Inc.*, 284 Fed. Appx. 14,

---

[5] Wells Fargo initiated two actions to confess judgment in the Circuit Court for Fairfax County, Virginia.  In *Wells Fargo Bank, N.A. v. Suthanthiran*, CL 2010-9395, a judgment was entered in favor of the Bank and against the Plaintiff Suthanthiran in the principal amount of $12,119,254.01.  In *Wells Fargo Bank, N.A. v. Gunston Hall Realty, Inc.*, CL 2010-9414, a judgment was entered in favor of the

15 (4th Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  *Accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'") (citations omitted); *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009).  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (*quoting Twombly*, 550 U.S. at 557).

"Ultimately, a complaint must contain 'sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 255-56 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).  "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citations omitted).  "In other words, a complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1952).  Satisfying this "context-specific" test does not require "detailed factual allegations." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949-50).  However, the complaint must "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).  "Without such 'heft,' the plaintiff's claims cannot establish a valid entitlement to

---

Bank and against Plaintiffs Gunston Hall and Best Realty in the principal amount of $12,119,254.01.  A hearing is scheduled on October 8, 2010, on the motions to set aside confession of judgment.

relief, as facts that are 'merely consistent with a defendant's liability,' fail to nudge claims 'across the line from conceivable to plausible.'" *Id.* (internal citations omitted).

Moreover, a pleading alleging fraud, as the Complaint purports to do in Count II, "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).   The "circumstances" are "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Carter v. Halliburton Co.*, No. 08cv1162, 2009 U.S. Dist. LEXIS 63649, *21-22 (E.D. Va. July 23, 2009) (Cacheris, J.) (stating that the purpose of Rule 9(b) is "to put the defendant on notice of the conduct complained of, to eliminate fraud actions in which all the facts are learned after discovery, to protect defendants from frivolous claims, and to protect defendants from the harm to their goodwill and reputation that may result from fraud claims") (citation omitted).

Finally, in ruling on a motion to dismiss, the Court may consider matters of public record and exhibits attached to the complaint. *Moore v. Flagstar Bank,* 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (Clarke, J.).   It is also well-established that a court may ignore factual allegations in a complaint contradicted by the terms of documents incorporated into the pleadings. *See Trigon Ins. Co. v. Columbia Naples Capital, LLC,* 235 F. Supp. 2d 495, 499 n.2 (E.D. Va. 2002) (Hudson, J.) (stating that the court is not bound to accept as true factual allegations contradicted by exhibits to complaint).

Read in the light of the pleading standards enunciated above, and in consideration of the Plaintiffs' allegations and the law of Virginia, as set forth below, all claims asserted in the Complaint should be dismissed with prejudice.

## II.   CHOICE OF LAW

Because this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, it must apply the choice-of-law principles of the Commonwealth of Virginia.  *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941) (holding that a federal court having diversity jurisdiction over a case must apply the choice-of-law principles of the state in which the federal court is located).   Virginia choice-of-law rules govern tort actions filed in the Eastern District of Virginia.  *Dominican Republic v. AES Corp.*, 466 F. Supp. 2d 680, 693 (E.D. Va. 2006) (Lee, J.).   Virginia applies the law of the place of the wrong, *i.e.*, "the place where the injury was suffered, not where the tortious act took place." *Id.*   (quoting *Rahmani v. Resorts Int'l Hotel, Inc.*, 20 F. Supp. 2d 932, 937 (E.D. Va. 1998) (Ellis, J.)).   The wrongs alleged in the Complaint were committed in Virginia.   (*See* Compl. ¶ 8) ("[T]he transactions and/or occurrences related to this cause of action occurred in Fairfax County, Virginia.").   Moreover, the negotiations between the Wells Fargo and Plaintiffs were conducted in Virginia.   Therefore, in regards to the fraud claim alleged, Virginia law will apply.  *See House v. Kirby*, 355 S.E.2d 303, 306 (Va. 1987) ("Fraud . . . is purely a tort. . . . The duty to refrain from fraudulent acts is imposed by tort law, not by any contract between the parties. The character of fraud is not changed from tort to contract merely because the parties are also engaged in a contractual relationship.") (internal citations omitted).

To the extent that Plaintiffs have alleged contractual claims, the parties agreed that Virginia law would apply.   (Compl., Ex. 1, ¶ 32).   Virginia courts will generally honor the contracting parties' choice of law.  *See, e.g., Paul Business Systems, Inc. v. Canon U.S.A., Inc.*, 397 S.E.2d 804, 807 (Va. 1990) ("[W]here parties to a contract have expressly declared that the agreement shall be construed as made with reference to the law of a particular jurisdiction, we will recognize such agreement and enforce it, applying the law of the stipulated jurisdiction.")

(citations omitted); *Settlement Funding, LLC v. Neumann-Lillie*, 645 S.E.2d 436, 438 (Va. 2007) (reversing circuit court's judgment which refused to enforce parties' contractual choice of Utah law); *Weslaco Holding Co., L.L.C. v. Pittman*, No. 2:06cv598, 2007 U.S. Dist. LEXIS 57024, *6 (E.D. Va. Aug. 6, 2007) (Jackson, J.) (quoting *Paul Business Systems*).

III.   PLAINTIFFS' COMPLAINT MUST BE DISMISSED IN ITS ENTIRETY

A.   **Plaintiffs Have Failed to State a Claim for a Violation of the Virginia Equal Credit Opportunity Act (Count I)**

"The provisions of the Virginia [ECOA] generally parallel those of" the federal Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, et seq. *Eure v. Jefferson Nat'l Bank*, 448 S.E.2d 417, 420 n.4 (Va. 1994). The Virginia ECOA provides that it "shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction: . . . [o]n the basis of race, color, religion, national origin, sex or marital status, or age (provided that the applicant has the capacity to contract)." Va. Code Ann. § 59.1-21.21:1. The statute defines "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor, indirectly by use of an existing credit plan for an amount exceeding the previously established credit limit." *Id.* § 59.1-21.20(a). "Credit" is defined as the "right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefore." *Id.* § 59.1-21.20(b). Under the statute, a "creditor" is defined as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." *Id.* § 59.1-21.20(c).

Assuming for purposes of argument the disputed contentions that these commercial loan transactions are subject to the Virginia ECOA, these commercial borrowers are "persons"

protected by the statute, and these Plaintiffs applied for an extension or renewal of credit after they became payable in full on January 1, 2010, Plaintiffs' allegations fall far short of articulating a claim for violation of the Virginia ECOA.  First, Plaintiffs' slanderous allegations of an "established history of discriminating against minority [borrowers]" are unfounded, untrue, and wholly irrelevant to establishing whether Wells Fargo discriminated against these particular commercial borrowers and guarantors on "the basis of" of race and/or national origin.  Plaintiffs do not and cannot establish any link between their hyped, fabricated, and general allegations of discriminatory lending practices and the discrete controversy at issue here.  An ECOA claim must relate to specific credit transactions and cannot be predicated on general allegations of a lender's historical dealings with minority borrowers.

Plaintiffs have alleged no facts that establish that Wells Fargo "refused to agree to renewals or extensions of the debt" on the basis of race and/or national origin.  When it confessed judgment, the Bank exercised and enforced a contractual right it had under agreed upon loan documents, and no facts are alleged to support an assertion that the Bank's conduct was motivated by racial and/or national origin prejudice.  Plaintiffs cite to a June 24, 2010 letter in support of the claim that the "banks actions [sic] was the result of racial (and/or national origin) discrimination."  (Compl. ¶ 21; *Id.*, Ex. 4).  However, the June 24 letter was written by Plaintiff Suthanthiran and does not provide any indicia of discriminatory acts.  The self-serving and purely assumptive statement of Suthanthiran cannot establish that any discriminatory actions were taken by Defendants on the basis of race and/or national origin.

Plaintiffs allege that they were "compelled to agree to" "onerous terms," such as confessed judgment provisions, waivers and releases of claims, and a waiver of a right to a jury trial.  (Compl. ¶ 14).  Plaintiffs are far from unsophisticated borrowers.  The Complaint alleges that they are "thriving, ongoing businesses" and touts a 37-year lending relationship with the

Bank and its predecessor entities.  (Compl. ¶ 37).  Moreover, in the Waiver and Amendment Agreement, Plaintiffs acknowledged that they were represented by counsel throughout the workout process and fully understood the contract they signed:

> (b)    Each obligor has freely and voluntarily entered into this Agreement after an adequate opportunity and sufficient period of time to review, analyze and discuss all terms and conditions of this Agreement and all factual and legal matters relevant hereto with counsel freely and independently chosen by it. Each Obligor further acknowledges that it has actively and with full understanding participated in the negotiation of this Agreement after consultation and review with its counsel and that this Agreement has been negotiated, prepared and executed without fraud, duress, undue influence or coercion of any kind or nature whatsoever having been exerted by or imposed upon any party to this Agreement.

(Compl., Ex. 1, at 10).  Plaintiffs cannot now contend coercion, duress, or discriminatory terms.

Similarly, Plaintiffs cannot now claim that the terms of the parties' voluntary agreements were onerous as they waived the right to make such an assertion:

> (a)    Each Obligor has no defenses, affirmative or otherwise, rights of setoff, rights of recoupment, claims, counterclaims, actions or causes of action of any kind or nature whatsoever against the Lender or any past, present or future agent, attorney, legal representative, predecessor-in-interest, affiliate, successor, assign, employee, director or officer of the Lender, directly or indirectly, arising out of, based upon, or in any manner connected with, any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type, whether known or unknown, which occurred, existed, was taken, permitted, or began prior to the execution of this Agreement and accrued, existed, was taken, permitted or begun in accordance with, pursuant to, or by virtue of the Obligations or any terms or conditions of the Loan Documents, or which directly or indirectly relate to or arise out of or in any manner are connected with the Obligations or any of the Loan Documents; TO THE EXTENT ANY SUCH DEFENSES, AFFIRMATIVE OR OTHERWISE, RIGHTS OF SETOFF, RIGHTS OF RECOUPMENT, CLAIMS, COUNTERCLAIMS, ACTIONS OR CAUSES OF ACTION EXIST OR EXTEND, SUCH DEFENSES, RIGHTS, CLAIMS, COUNTERCLAIMS, ACTIONS AND CAUSES OF ACTION ARE HEREBY FOREVER WAIVED, DISCHARGED AND RELEASED.

(*Id.*).[6]  Plaintiffs additionally released any and all claims they had against Wells Fargo and its affiliates and employees.  (*See id.*, Ex. 1, at 11).

Plaintiffs have not alleged any factual basis to support their Virginia ECOA claim.  Wells Fargo loaned these corporate borrowers millions of dollars and they thereafter defaulted on their loan obligations.  There is no law in this country which requires Wells Fargo to further extend or renew defaulted commercial loans or refrain from exercising confession of judgment rights in the circumstances present here.  The unsupported allegation that the Bank's decision not to consider further renewal or extension of the loans and to confess judgment was somehow motivated by racial bias directed toward these corporate entities and their CEO is not plausible.  Plaintiffs' irrelevant allegations about onerous contract terms voluntarily agreed to similarly fail to survive *Iqbal/Twombly* scrutiny.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The claim for violation of the Virginia ECOA is speculative and not plausible on its face and must be dismissed with prejudice.

**B.    Plaintiffs' Fraud and/or Constructive Fraud Claim (Count II) Must be Dismissed Because it Fails to State a Claim Against Defendants**

Plaintiffs have failed to articulate a claim for fraud or constructive fraud.  The allegations in support of Plaintiffs' fraud claims are sparse, gross generalizations insufficient to form the basis of a valid fraud claim.  Under Virginia law, a plaintiff asserting a cause of action for actual fraud bears the burden of proving by clear and convincing evidence the following elements: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reasonable reliance by the party mislead, and (6) resulting damage to the party misled.  *See, e.g., Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994).  Similarly, to prevail on a claim for constructive fraud, Plaintiffs must prove by a showing of

---

[6] The Waiver and Amendment Agreement defines "Obligor" as Krishnan Suthanthiran, Huestis,

clear and convincing evidence that a false representation of a material fact was made innocently or negligently and the injured party was damaged as a result of his reliance upon the misrepresentation. *State Farm Mut. Auto. Ins. Co. v. Remley,* 618 S.E.2d 316, 320 (Va. 2005). Additionally, a finding of constructive fraud requires clear and convincing evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation. *Id.*

Furthermore, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The "circumstances" are "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Carter*, 2009 U.S. Dist. LEXIS 63649, at *21-22 (citation omitted) (stating that the purpose of Rule 9(b) is "to put the defendant on notice of the conduct complained of, to eliminate fraud actions in which all the facts are learned after discovery, to protect defendants from frivolous claims, and to protect defendants from the harm to their goodwill and reputation that may result from fraud claims"). Plaintiffs' allegations fail to satisfy Fed. R. Civ. P. 9(b).

In Count II, Plaintiffs allege that (1) a Wells Fargo executive testified before Congress that the Bank was "'making credit available to creditworthy borrowers'", (2) they "had a reasonable expectation that credit renewals would continued to be reasonably provided for their business" because they were "creditworthy with an excellent payment record" and (3) this "expectation was reasonable based upon the defendant's words and actions." (Compl. ¶¶ 33-34). Plaintiffs contend that Defendants' "refusal to continue reasonable loan extensions under the circumstances as described above constitutes a misrepresentation and/or constructive misrepresentation of a material fact." (*Id.* ¶ 36). Plaintiffs allege that these misrepresentations

---

Best Medical, Gunston Hall, and Best Industries. (Compl., Ex. 1, at 1).

"induced the plaintiff's [sic] into accepting or guaranteeing loans that defendant solicited," (*Id.* ¶ 37), and that the loan terms were "unconscionable." (*Id.* ¶ 35).

First, as discussed above, Plaintiffs entered into the Waiver and Amendment Agreement voluntarily, knowingly, and with the advice of counsel.  In that Agreement, they waived the right to assert that they expected future renewals or extensions.  They similarly waived and released the right to claim that the loan terms were onerous, unconscionable or fraudulent.  Having waived any and all claims and defenses when they signed the Agreement in order to obtain Wells Fargo's forbearance on the debt, they cannot now assert that Wells Fargo fraudulently induced them to sign a contract with onerous terms.

Moreover, Plaintiffs' fraud claim confuses a misrepresentation with an expectation.  The Complaint is replete with allegations that Plaintiffs expected the Bank to act in a certain manner.  A claim of fraud cannot be predicated on actions a party expects to happen without the existence of a misrepresentation made to that party that those actions will happen.  The Complaint is devoid of any allegation that the Bank told these borrowers at any time that after January 1, 2010, that the loans would be further extended or renewed.  Plaintiff has failed to plead the essential element of fraud – the existence of a false representation.

Even if Plaintiff's expectation constitutes a misrepresentation, Plaintiffs' allegations of fraud are too vague to be actionable.  *See, e.g.*, *Woodring v. Board of Grand Trustees of Benevolent & Protective Order of Elks*, 633 F. Supp. 583, 592 (W.D. Va. 1986) ("It is settled law in Virginia that in order to amount to fraud, misrepresentations must not be vague and inconclusive."); *Saxby v. Southern Land Co.*, 63 S.E. 423, 424 (Va. 1909) ("Statements which are vague and indefinite in their nature and terms, or are merely loose, conjectural or exaggerated, go for nothing, though they may not be true, for a man is not justified in placing reliance upon them.  An indefinite representation ought to put the person to whom it is made on

inquiry."). Plaintiffs cannot simply refer to "words and actions" by the Bank; Plaintiffs must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Plaintiffs have not plead "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *United States ex rel. Carter*, 2009 U.S. Dist. LEXIS 63649, at *21-22.

In addition, Plaintiffs' fraud claims fail because an action for fraud cannot be predicated on a future promise. Under Virginia law, a "[m]isrepresentation of a future promise can ordinarily not be a basis for fraud." *See, e.g., Hessek v. N. Am. Morg. Ins. Servs.*, Civ. Action No: 2:02cv985, 2003 U.S. Dist. LEXIS 27361, *16-17 (E.D. Va. Oct. 16, 2003) (Morgan, J.) (citing *Sea-Land Serv., Inc. v. O'Neal*, 297 S.E.2d 647, 651 (Va. 1982)). Furthermore, "where a defendant is alleged to have made a promise which he intended not to perform, 'his promise is a misrepresentation of *present* fact, and if made to induce the promisee to act to his detriment, is actionable as an actual fraud.'" *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652, 663 (E.D. Va. 2002) (Cacheris, J.) (quoting *Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 537 (4th Cir. 1988)). Again, to the extent that Plaintiffs' contentions constitute an allegation of a misrepresentation, Plaintiffs cannot advance a fraud claim based on the alleged "expectation that credit renewals would continue to be reasonably provided for their business." (Compl. ¶ 33).

Without establishing the existence of a false representation, Plaintiffs cannot allege that they reasonably relied on a misrepresentation. And, even if Plaintiffs' broad generalized assertion that they expected the loans to be renewed or extended could be construed as a misrepresentation, there can be no reasonable reliance as a matter of law, particularly in the present financial climate. *White v. Potocska*, 589 F. Supp. 2d 631, 650 (E.D. Va. 2008) (Davis,

J.) ("To prove reliance, a plaintiff must demonstrate that its reliance 'was reasonable and justified.'") (citation omitted).

Lastly, Plaintiffs cannot plausibly claim that they suffered any damages as a result of a misrepresentation.   Plaintiffs' damages, if any, were caused by their own defaults under commercial loan agreements which required repayment in full by January 1, 2010.   Plaintiffs failed to comply with their contractual obligations and the cry of fraud is disingenuous.   *See Murray v. Hadid*, 385 S.E.2d 898, 903 (Va. 1989) ("[I]n order to recover under a cause of action for fraud, a plaintiff must prove damages which are caused by his detrimental reliance on a defendant's material misrepresentation.") (citing *Winn v. Aleda Const. Co.*, 315 S.E.2d 193, 195 (Va. 1984)).

For these reasons, Count II must be dismissed with prejudice.

### C.     Plaintiffs Cannot Allege an Independent Cause of Action for Equitable Estoppel (Count III)

In Count III, Plaintiffs purport to allege a claim for equitable estoppel.   The doctrine of equitable estoppel is a "'well-established concept invoked by courts to aid a party who, in good faith, has relied, to his detriment, upon the representations of another.'" *Datastaff Tech. Group, Inc. v. Centex Constr. Co.*, 528 F. Supp. 2d 587, 593 (E.D. Va. 2007) (Ellis, J.) (quoting *United States ex rel. Humble Oil & Ref. Co. v. Fid. & Cas. Co. of New York*, 402 F.2d 893, 897 (4th Cir. 1968)). Equitable estoppel, however, may be "raised as a defense but not as an independent cause of action." *Vecco Constr. Indus. v. Erkiletian*, 3 Va. Cir. 315, 319 (Alexandria 1985).   Not only has equitable estoppel been raised as an independent cause of action in Plaintiffs' Complaint, but it has also been alleged to request injunctive relief.   Specifically, Plaintiff states that Defendants should be "*equitably restrained* from asserting its right to enter or foreclose on

17

the judgment." (Compl. ¶ 46) (emphasis added). However, Plaintiffs have not satisfactorily shown they are entitled to injunctive relief.[7]

Plaintiffs' equitable estoppel claim merely parrots the unsupported fraud claim. The allegations in support of Count III, like the allegations in support of fraud, fail to establish that Wells Fargo falsely represented or concealed a material fact. When Plaintiffs signed the Waiver and Amendment Agreement, they acknowledged they did so voluntarily and understood the terms, and waived and released certain rights, claims and defenses. Plaintiffs cannot now come before the Court and claim that the Agreement was onerous and unfair or that they lacked an understanding of what they were signing and the ramifications of signing it. It is Plaintiffs who are estopped as a matter of law from bringing this Complaint by virtue of the Agreement they signed and not the other way around. Because equitable estoppel is a defense and even if it was an affirmative claim Plaintiffs have not pleaded facts to support a right of recovery, Count III must be dismissed with prejudice.

### D.    Plaintiffs' Breach of Contract/Duty of Good Faith and Fair Dealing Claim (Count IV) Fails to State a Claim as a Matter of Law

Count IV must be dismissed because it fails to articulate a claim for breach of contract or breach of good faith and fair dealing. Indeed, Count IV is the most vague and obscure claim in the entire Complaint. Plaintiffs simply state that "Defendant had a duty of good faith and fair dealing in it's [sic] performance and enforcement of the contract between the parties." (Compl. ¶ 52). Plaintiffs then repeat that "Defendant breached this duty by luring the plaintiff into continuing to borrow money on yearly notes that were automatically renewed and then abruptly failing to renew them in 2009 despite timely payments on the notes." (*Id.* ¶ 53). Plaintiffs also

---

[7] Even if injunctive relief was appropriate, this is not the proper court to award it. Wells Fargo is enforcing its judgments against Best Industries, Gunston Hall, and Suthanthiran in Virginia and Plaintiffs

contend that "Defendant[s] forced onerous and unconscionable terms upon the plaintiff in order to continue the financing."  (*Id.* ¶ 53).  Plaintiffs allege that "these actions result in bad faith and unfair dealing toward the plaintiff."  (*Id.* ¶ 54).

Plaintiffs have failed to plead any facts to support a claim for breach of contract or breach of implied covenant of good faith and fair dealing.  If Plaintiffs intended to articulate a breach of contract claim, they have failed to allege even the most basic elements of such a claim.  Plaintiffs fail to identify the "contract between the parties" they complain was breached.  Presumably, it is the Waiver and Amendment Agreement, yet Defendants have no earthly idea of what contractual obligation in that Agreement allegedly was breached.  Any claim that Plaintiffs were lured into borrowing money and that Wells Fargo breached the parties' contract by failing to renew or extend the loans is waived by the express waiver and release provisions in the Waiver and Amendment Agreement.  Moreover, there certainly is no contractual term in that Agreement requiring Wells Fargo to further renew or extend the loan obligations so that cannot be a basis for the purported claim.

Similarly, Plaintiffs have failed to plead a claim for breach of the implied covenant of good faith and fair dealing.   In Virginia, there is no independent cause of action for breach of implied covenant of good faith and fair dealing.  *See, e.g., L&E Corp. v. Days Inns of America, Inc.*, 992 F.2d 55, 59 n.2 (4th Cir. 1993) (noting that Virginia does not recognize an independent claim for breach of the implied covenant of good faith and fair dealing); *see also Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 385 (Va. 1996) (holding that there is no cause of action for breach of an implied covenant of good faith and fair dealing); *JTH Tax, Inc. v. Whitaker*, No. 07cv170, 2007 U.S. Dist. LEXIS 71938, *5 (E.D. Va. 2007) (Morgan, J.)

---

have moved to set aside the Confessed Judgments in the Circuit Court of Fairfax County.  The Circuit Court of Fairfax County will decide if injunctive relief is appropriate.

(same); *Derthick v. Bassett-Walker, Inc.*, 904 F. Supp. 510, 522 (W.D. Va. 1995), *aff'd*, 106 F.3d 390 (4th Cir. 1997) (same).  Because there is no such claim under Virginia law and there is no provision in the contract which required the Bank to even consider, much less require, the Bank to agree to further extend or renew the loans, Count IV fails as a matter of law.

**IV.   J. KENT THOMPSON MUST BE DISMISSED FROM THIS ACTION BECAUSE PLAINTIFFS HAVE NO BASIS FOR RECOVERY AGAINST HIM**

Defendant Thompson was named as an individual defendant for the improper purpose of harassment and thwarting diversity jurisdiction.  There simply is no reasonable basis for Plaintiffs to expect recovery from him.  There are no specific allegations in the Complaint of conduct by Mr. Thompson in his individual capacity, undertaken outside of the scope of his employment with the Bank, which would give rise to any of the causes of action alleged.  Mr. Thompson is a career bank officer whose reputation has been tarnished by the frivolous assertions in the Complaint.[8]  The generalized assertion that he has discriminated against these commercial borrowers or made fraudulent representations was not made in good faith and was for purposes of harassment in violation of Fed. R. Civ. P. 11.  A separate Rule 11 motion will be filed seeking appropriate sanctions.

A complaint must show that "that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 555 (citations omitted).  Not only is the present Complaint devoid of any allegation that Thompson acted outside of the scope of his employment for the Bank, but conspicuously absent from the Complaint is any allegation of specific conduct by Mr. Thompson that could remotely be viewed as discriminatory or fraudulent.  All that can be inferred from the allegations

---

[8] Mr. Thompson has been employed as a commercial lending officer in the Washington, D.C. metropolitan region for over 30 years.  He has been an officer and employee of defendant Wells Fargo and its predecessor entities for greater than 20 years.

is that Plaintiffs communicated with Thompson about the credit facilities.  (*See* Compl. ¶ 19)
("On May 6 2010 plaintiffs again contacted the defendant J. Kent Thompson reiterating its (sic)
good faith efforts to pay significant sums toward retirement of the debt" and "requested a
meeting with the individual responsible for making the decision").  With regard to the Virginia
ECOA claim, no particularized acts of discrimination by Thompson are alleged, even if he could
be liable individually under the ECOA.   In fact, Plaintiffs only allege that Suthanthiran
"contacted defendant bank's senior Vice President, defendant J. Kent Thompson and informed
him that he believed that *the banks [sic] action* was the result of racial (and/or national origin)
discrimination.  (Compl. ¶ 21) (emphasis added).  There are no allegations in the Complaint
which accuse Mr. Thompson of undertaking any specific discriminatory acts or engaging in
conduct exhibiting racial bias.  Even if there were such allegations, because Mr. Thompson is a
Bank officer and employee acting within the scope of his employment, there would be no
individual liability; any vicarious liability would flow to the Bank.  *See Bryson on Virginia Civil
Procedure*, § 5.02(8) (4th ed. 2005) ("An agent having no personal interest in the affairs between
his principal and third parties should not be made a party plaintiff or defendants, as a general
rule.").  Thus, the claim against him individually fails as a matter of law.

The same is true of the fraud claim.  There are no allegations of any misrepresentations
by Mr. Thompson to support a claim of fraud.  All of the alleged conduct that supports the
purported "fraud" claim is conduct by the Bank.  Plaintiffs allege that on February 26, 2010,
"Mr. David Hoyt, Wells Fargo Head of Whole sale Banking testified before the House Financial
Services Committee and the House Small Business Committee that the company is 'making
credit available to credit worthy borrowers.'"  (Compl. ¶ 33).  Plaintiffs assert that they were
creditworthy and therefore fraud occurred because they had an expectation that credit would

continue. The representations of Mr. Hoyt to Congress on behalf of Wells Fargo cannot give rise to a claim of fraud against Mr. Thompson.

The equitable estoppel claim similarly is not plausible. Mr. Thompson never had a loan agreement with these borrowers so cannot be liable individually for any alleged damages stemming from the termination of the lending relationship or the enforcement of contractual rights. Mr. Thompson does not have a contract with these borrowers that he is trying to enforce so he cannot be subject to an equitable estoppel claim even if such a cause of action existed.

Likewise, the implied covenant of good faith and fair dealing claim can never be successful because Virginia does not recognize such a cause of action. Even if it did, Mr. Thompson did not contract with these borrowers so no covenant of good faith and fair dealing could exist between them.

The claims are frivolous, unfounded, and sanctionable. The Complaint should be dismissed with prejudice against Mr. Thompson.

## CONCLUSION

For the reasons stated above, Wells Fargo Bank, N.A. and J. Kent Thompson respectfully request that Plaintiffs' Complaint be dismissed with prejudice. Additionally, pursuant to a motion to be filed separately, Wells Fargo intends to seek an award of attorney's fees under Fed. R. Civ. P. 11 and the applicable loan documents, which affirmatively provide for the recovery of attorney's fees in the circumstances present here.

**WELLS FARGO BANK, N.A.**

**J. KENT THOMPSON**


/s/ Mary C. Zinsner
Mary Catherine Zinsner (VSB No. 31397)
mary.zinsner@troutmansanders.com

S. Mohsin Reza (VSB No. 75347)
mohsin.reza@troutmansanders.com
TROUTMAN SANDERS LLP
1660 International Drive, Suite 600
McLean, VA  22102-3805
Telephone:  703-734-4334
Facsimile:  703-734-4340

Jon S. Hubbard (VSB No. 71089)
jon.hubbard@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
P.O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1406
Facsimile: (804) 698-5186

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of September, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system.  I further certify that on the 7th day of September, 2010, I will send the foregoing by first-class mail, postage prepaid, and electronic mail to the following:

Shawn R. Weingast, Esq.
General Counsel, Best Industries, Inc.
7643 Fullerton Road
Springfield, VA 22153
Tel:  703-451-2378
sweingast@teambest.com

/s/ Mary C. Zinsner
Mary Catherine Zinsner (VSB No. 31397)
mary.zinsner@troutmansanders.com
S. Mohsin Reza (VSB No. 75347)
mohsin.reza@troutmansanders.com
TROUTMAN SANDERS LLP
1660 International Drive, Suite 600
McLean, VA  22102-3805
Telephone:  703-734-4334
Facsimile:  703-734-4340

*Counsel for Defendants*

428282v2