## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | |
|---|---|
| **BEST MEDICAL INTERNATIONAL, INC., et al.,** | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| **v.** | )   **Case No. 1:10cv988 (LOG/TRJ)** |
| | ) |
| **WELLS FARGO INC, NA, as successor in** | ) |
| **interest to WACHOVIA BANK, N.A., et al.,** | ) |
| | ) |
| *Defendants.* | ) |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
### MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendants, Wells Fargo Bank, N.A. ("Wells Fargo" or the "Bank"), incorrectly named in the First Amended Complaint as Wells Fargo Inc., NA,[1] and J. Kent Thompson, by counsel, hereby submit the following memorandum in support of their Motion to Dismiss Plaintiffs' First Amended Complaint.

## INTRODUCTION

Plaintiffs' First Amended Complaint must be dismissed because it contains the same fatal flaws that plagued their initial pleading. This litigation is a desperate effort to divert Wells Fargo from its enforcement and collection of substantial judgments it obtained in state court arising out of Plaintiffs' default under various commercial loans and lines of credit. Plaintiffs Best Medical International, Inc. ("Best Medical"), Huestis Machine Corp. ("Huestis"), Best Industries, Inc. ("Best Industries") and Gunston Hall Realty, Inc. ("Gunston Hall") and Krishnan Suthanthiran are borrowers and guarantors of defaulted commercial debt owed to Wells Fargo in excess of $12 million dollars. After the credit facilities went into default, Plaintiffs sought forbearance

---

[1] Plaintiffs named "Wells Fargo Inc., N.A., as successor in interest to Wachovia Bank, N.A." as the defendant. There is no such legal entity. The proper party defendant is Wells Fargo Bank, N.A., successor-by-merger to Wachovia Bank, National Association.

from Wells Fargo from exercising its default rights under the parties' loan documents.  Wells Fargo agreed to forbear temporarily from exercising its right to take enforcement and collection action with respect to the defaulted loans.  Plaintiffs and Wells Fargo, both represented by counsel in the negotiation and execution process, signed a Waiver and Amendment Agreement, dated July 31, 2009.  The Waiver and Amendment Agreement extended the maturity date for the various credit facilities and iterated new covenants and obligations, such as requiring Plaintiffs, among other things, to continue to make monthly interest payments and provide additional collateral.  The Waiver and Amendment Agreement expressly required Plaintiffs to use their best efforts to refinance the credit facilities through another lender during the extension period and pay off the obligations prior to the maturity date.  In that Agreement, Plaintiffs signed broad waivers and releases in which they knowingly and voluntarily waived any and all defenses and claims relating or arising or connected with their Obligations and the Loan Documents.[2]

The loans were not refinanced.  By the terms of the Agreement, the extension period expired January 1, 2010, at which time all of the credit facilities became due and payable in full. Wells Fargo thereafter refused to further forbear from exercising its default rights.  On June 30, 2010, pursuant to its rights under the Agreement and Loan Documents, Wells Fargo obtained separate Confessions of Judgment in the Circuit Court of Fairfax County against (i) Best Industries and Gunston Hall; and (ii) Suthanthiran.  After being served with the Judgments, Plaintiffs filed motions to have the Confessions of Judgment set aside and simultaneously filed a Complaint in the Circuit Court of Fairfax County.  Wells Fargo removed the Complaint to this Court.  On September 27, 2010, Plaintiffs filed the First Amended Complaint.

---

[2] "Obligations" is a defined term in the Agreement, and includes "all of the Obligors' obligations to pay when due any debts, principal, interest, expenses and other amounts any Obligor owes Lender now or later, whether in under this Agreement, the Credit Facilities, the Loan Documents or otherwise, . . ."  (FAC, Ex. 6, at 5).

Plaintiffs contend that Wells Fargo "forced" them to enter into loan documents with "onerous" loan terms and engaged in national origin discrimination against them by failing to renew or extend the commercial loans and lines of credit when they became due and payable in full. The First Amended Complaint purports to advance a theory that a lender is legally obligated to renew and extend credit facilities even though the loans are in default, millions of dollars are owed to the bank, and the economy is in sharp recession. The First Amended Complaint similarly posits that upon default, a bank cannot exercise its rights, agreed to by the parties, against the borrower for its failure to meet its contractual obligations because of the parties' longstanding lending relationship and the ethnicity of its CEO. These illogical theories underpin the following claims alleged in the First Amended Complaint: violation of the Virginia Equal Credit Opportunity Act against Wells Fargo ("Virginia ECOA") (Count I); violation of ECOA against J. Kent Thompson (Count II); fraud and/or constructive fraud (Count III); equitable estoppel (Count IV); economic duress (Count V); breach of fiduciary duty (Count VI); and negligence (Count VII).

All of Plaintiffs' claims fail as a matter of law. Plaintiffs have failed to allege facts to make their theories of recovery plausible and the First Amended Complaint should be dismissed with prejudice.

## **FACTS**

Wells Fargo and its predecessor, Wachovia Bank, National Association, have a commercial banking relationship with Plaintiffs, Best Medical International Inc., Huestis Machine Corp., Best Industries, Inc., and Gunston Hall Realty, Inc. (1st Am. Compl. ¶ 11) (hereinafter "FAC"). Defendant, Krishnan Suthanthiran is the sole owner, sole shareholder, and chief executive officer of Best Medical, Huestis, Gunston Hall, and Best Industries. (*Id.* ¶ 5). Over various periods of time, Wells Fargo provided Plaintiffs with term loans and lines of credit.

(*Id.* ¶ 11).   Most recently, Wells Fargo extended term loans and credit lines, which were evidenced by, among other documents, (1) a promissory note from Best Medical for $3 million; (2) a promissory note from Gunston Hall for $5 million; (3) a promissory note from Huestis in the amount of $5 million; and (4) promissory note from Huestis in the amount of $2 million (collectively, the "credit facilities").   (*Id.* ¶ 12).  According to the First Amended Complaint, in 2006 and 2007 the parties entered into "interest rate swap agreements relative to the Huestis Machine Corporation term loans."  (*Id.* ¶¶ 14, 84).

On or about May 8, 2009, Wells Fargo informed the borrowers that one or more events of defaults or defaults had occurred under the credit facilities.  (FAC, Ex. 6, at 2).  The borrowers requested that Wells Fargo waive the existing events of default in order to provide the borrowers and guarantors time to refinance and repay the credit facilities.  (*Id.*).  As part of their workout, the parties, on July 31, 2009, entered into the Waiver and Amendment Agreement, a copy of which is attached to the First Amended Complaint as Exhibit 6.  The Waiver and Amendment Agreement required the Plaintiffs to use their best efforts to refinance the various credit facilities with another lender prior to the end of the extension period and pay off the obligations in full. (FAC, Ex. 6, at 8).   In conjunction with the Waiver and Amendment Agreement, Plaintiffs entered into guaranty of payment agreements in which they guaranteed repayment of the credit facilities.  (FAC, Ex. 6, at 5).  According to the Waiver and Amendment Agreement, Plaintiffs agreed that the obligations under the credit facilities would be due and payable in full on January 1, 2010.  (*Id.*, Ex. 6, at 8).

The Waiver and Amendment Agreement thereafter expired on January 1, 2010, at which time the loan obligations were not paid in full.  (FAC ¶ 20; *Id.*, Ex. 6, at 8). The parties were not able to agree on terms for renewal or further extension of the credit facilities.  (*See* FAC ¶ 17). On June 30, 2010, Wells Fargo exercised its right under the Guaranty Agreements to confess

judgment in the Circuit Court of Fairfax County. (*Id.* ¶¶ 27).[3]  On August 3, 2010, Plaintiffs filed motions to set aside the Confessions of Judgments in the Circuit Court of Fairfax County, copies of which were attached to Defendants' initial motion to dismiss.  Plaintiffs simultaneously filed the Complaint and proceeded to effect service of process.

On August 30, 2010, Defendants timely filed their Notice of Removal.  After Defendants filed their motion to dismiss, Plaintiffs filed the present First Amended Complaint.

## ARGUMENT

### I.    LEGAL STANDARD

A motion to dismiss tests the sufficiency of the claimant's initial pleading and does not resolve contests surrounding the facts or the merits of a claim.  *See, e.g., Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  Although the district court may draw all reasonable inferences in favor of the plaintiff, *see Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), it "need not accept the legal conclusions drawn from the facts, and [it] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quotations omitted); *accord Botkin v. Fisher*, No. 5:08CV00058, 2009 U.S. Dist LEXIS 24554, *20 (W.D. Va. Mar. 25, 2009) ("[A] court is 'not required to accept unwarranted deductions of fact when ruling on a Rule 12(b)(6) motion.'" ) (citations omitted).

"To survive a Rule 12(b)(6) motion," the complaint's "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'"  *Demetry v. Lasko Prods. Inc.*, 284 Fed. Appx. 14,

---

[3] Wells Fargo initiated two actions to confess judgment in the Circuit Court for Fairfax County, Virginia. In *Wells Fargo Bank, N.A. v. Suthanthiran*, CL 2010-9395, a judgment was entered in favor of the Bank and against the Plaintiff Suthanthiran in the principal amount of $12,119,254.01.  In *Wells Fargo Bank, N.A. v. Gunston Hall Realty, Inc., et al.*, CL 2010-9414, a judgment was entered in favor of the Bank and against Plaintiffs Gunston Hall and Best Realty in the principal amount of $12,119,254.01.  A hearing is scheduled on December 16, 2010, on the motions to set aside confession of judgment.

15 (4th Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). *Accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'") (citations omitted); *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"Ultimately, a complaint must contain 'sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 255-56 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citations omitted). "In other words, a complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1952). Satisfying this "context-specific" test does not require "detailed factual allegations." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949-50). However, the complaint must "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950). "Without such 'heft,' the plaintiff's claims cannot establish a valid entitlement to relief, as facts that are 'merely consistent with a defendant's liability,' fail to nudge claims 'across the line from conceivable to plausible.'" *Id.* (internal citations omitted).

Finally, in ruling on a motion to dismiss, the Court may consider matters of public record and exhibits attached to the complaint. *Moore v. Flagstar Bank,* 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (Clarke, J.). It is also well-established that a court may ignore factual allegations in a complaint contradicted by the terms of documents incorporated into the pleadings. *See Trigon Ins. Co. v. Columbia Naples Capital, LLC,* 235 F. Supp. 2d 495, 499 n.2 (E.D. Va. 2002) (Hudson, J.) (stating that the court is not bound to accept as true factual allegations contradicted by exhibits to complaint).

Read in the light of the pleading standards enunciated above, and in consideration of the Plaintiffs' allegations and the law of Virginia, as set forth below, all claims asserted in the First Amended Complaint should be dismissed with prejudice.

## II.   CHOICE OF LAW

Because this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, it must apply the choice-of-law principles of the Commonwealth of Virginia. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941) (holding that a federal court having diversity jurisdiction over a case must apply the choice-of-law principles of the state in which the federal court is located). Virginia choice-of-law rules govern tort actions filed in the Eastern District of Virginia. *Dominican Republic v. AES Corp.*, 466 F. Supp. 2d 680, 693 (E.D. Va. 2006) (Lee, J.). Virginia applies the law of the place of the wrong, *i.e.*, "the place where the injury was suffered, not where the tortious act took place." *Id.* (quoting *Rahmani v. Resorts Int'l Hotel, Inc.*, 20 F. Supp. 2d 932, 937 (E.D. Va. 1998) (Ellis, J.)). The wrongs alleged in the Complaint were committed in Virginia. (*See* FAC ¶ 8) ("[T]he transactions and/or occurrences related to this cause of action occurred in Fairfax County, Virginia."). Moreover, the negotiations between the Wells Fargo and Plaintiffs were conducted in Virginia. Therefore, in regards to the fraud claim alleged, Virginia law will apply. *See House v. Kirby*, 355 S.E.2d 303,

306 (Va. 1987) (" Fraud . . . is purely a tort. . . . The duty to refrain from fraudulent acts is imposed by tort law, not by any contract between the parties. The character of fraud is not changed from tort to contract merely because the parties are also engaged in a contractual relationship.") (internal citations omitted).

To the extent that Plaintiffs have alleged contractual claims, the parties agreed that Virginia law would apply.  (FAC, Ex. 6, ¶ 32).  Virginia courts will generally honor the contracting parties' choice of law.  *See, e.g., Paul Business Systems, Inc. v. Canon U.S.A., Inc.*, 397 S.E.2d 804, 807 (Va. 1990) ("[W]here parties to a contract have expressly declared that the agreement shall be construed as made with reference to the law of a particular jurisdiction, we will recognize such agreement and enforce it, applying the law of the stipulated jurisdiction.") (citations omitted); *Settlement Funding, LLC v. Neumann-Lillie*, 645 S.E.2d 436, 438 (Va. 2007) (reversing circuit court's judgment which refused to enforce parties' contractual choice of Utah law); *Weslaco Holding Co., L.L.C. v. Pittman*, No. 2:06cv598, 2007 U.S. Dist. LEXIS 57024, *6 (E.D. Va. Aug. 6, 2007) (Jackson, J.) (quoting *Paul Business Systems*).

III.   **THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY.**

   A.   **Counts I and II Must Be Dismissed Plaintiffs Have Failed to Allege a Violation of the Virginia Equal Credit Opportunity Act.**

Plaintiffs have failed to state a claim against Wells Fargo and J. Kent Thompson for violations of the Virginia ECOA.  "The provisions of the Virginia [ECOA] generally parallel those of" the federal Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, *et seq.  Eure v. Jefferson Nat'l Bank*, 448 S.E.2d 417, 420 n.4 (Va. 1994).  The federal Equal Credit Opportunity Act is aimed at protecting consumers from discriminatory credit practices.  *See Capitol Indem. Corp. v. Aulakh*, 313 F.3d 200, 202 (4th Cir. 2002) (citing *Markham v. Colonial Mortgage Service Co.*, 605 F.2d 566, 569 (D.C. Cir. 1979) (stating that "one, perhaps even the main, purpose of the [ECOA] was to eradicate credit discrimination waged against women, especially married women

whom creditors traditionally refused to consider apart from their husbands as individually worthy of credit")).   The Virginia ECOA provides that it "shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction: . . . [o]n the basis of race, color, religion, national origin, sex or marital status, or age (provided that the applicant has the capacity to contract)."  Va. Code Ann. § 6.2-501 (formerly Va. Code Ann. § 59.1-21.21:1).[4]  The statute defines "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor, indirectly by use of an existing credit plan for an amount exceeding the previously established credit limit."  *Id.* § 6.2-500 (formerly § 59.1-21.20(a)).  "Credit" is defined as the "right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefore."  *Id.* § 6.2-500 (formerly § 59.1-21.20(b)).  Under the statute, a "creditor" is defined as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit."  *Id.* § 6.2-500 (formerly § 59.1-21.20(c)).

Plaintiffs have failed, as a matter of law, to establish the existence of a violation of the Virginia ECOA by either Wells Fargo or J. Kent Thompson.  Further, as discussed more fully herein, as a matter of law, J. Kent Thompson is not and was never, a "creditor" of the Plaintiffs as shown in the Waiver and Amendment Agreement and other applicable loan documents; he was and is, an employee of Wells Fargo.  Accordingly, J. Kent Thompson could not commit a violation of the Virginia ECOA and Plaintiffs have failed, as a matter or law, to offer or aver any legal or factual bases to show otherwise.

---

[4] On October 1, 2010, amendments to the Virginia ECOA were made effective.  The General Assembly of Virginia repealed and recodified the Virginia ECOA to Title 6.2 of the Code of Virginia.

Plaintiffs allege, in separate counts, that Wells Fargo and J. Kent Thompson violated the Virginia ECOA.  However, there is not a scintilla of discrimination alleged.  Moreover, Plaintiffs have alleged no facts to support a claim of discrimination, disparate impact, or disparate treatment.  *Accord Faulkner v. Glickman*, 172 F. Supp. 2d 732, 737 (D. Md. 2001) ("The credit applicant may prove discrimination in violation of the ECOA by relying on any one of three different approaches used in the employment discrimination context: (1) direct evidence of discrimination; (2) disparate impact analysis; and (3) disparate treatment analysis.").   All Plaintiffs offer are general allegations of discriminatory treatment of minority borrowers in litigation involving other borrowers while failing to allege specific facts that are germane to the lending relationship at issue in the present litigation.  Under *Iqbal* and *Twombly*, Plaintiffs must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  These Plaintiffs are not entitled to a fishing expedition.  As this Court well knows, the gates of discovery are not open to plaintiffs who have failed to state a plausible claim.  *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 260 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1950).

**1.      Plaintiffs have failed to state a claim against Wells Fargo for a violation of the Virginia ECOA.**

Assuming for purposes of argument the disputed contentions that (i) these commercial loan transactions are subject to the Virginia ECOA, (ii) these commercial borrowers are "persons" protected by the statute, and (iii) these Plaintiffs applied for an extension or renewal of credit after they became payable in full on January 1, 2010, Plaintiffs' allegations nevertheless fall far short of articulating a claim for violation of the Virginia ECOA.  First, Plaintiffs' slanderous allegations of an "established history of discriminating against minority [borrowers]" are unfounded, untrue, and wholly irrelevant to establishing whether Wells Fargo discriminated against these particular commercial borrowers and guarantors on "the basis of" of race and/or

national origin.  Plaintiffs do not and cannot establish any link between their hyperbolic, fabricated, and general allegations of discriminatory lending practices and the discrete controversy at issue here.  An ECOA claim must relate to specific credit transactions and cannot be predicated on general allegations of a lender's historical dealings with minority borrowers. Plaintiffs have failed to cite a single case, statute or other authority which would support such an untenable agreement.

Plaintiffs have alleged no facts that establish that Wells Fargo "refused to agree to renewals or extensions of the debt" on the basis of race and/or national origin.  When it confessed judgment, the Bank exercised and enforced a contractual right it had under agreed upon loan documents, and no facts are alleged to support an assertion that the Bank's conduct was motivated by racial and/or national origin prejudice.  Plaintiffs cite to a June 24, 2010 letter in support of the claim that the "banks actions [sic] was the result of racial (and/or national origin) discrimination."  (FAC ¶ 26; *Id.*, Ex. 8).  However, the June 24 letter was written by Plaintiff Suthanthiran and does not provide any indicia of discriminatory acts.  The self-serving statement of Suthanthiran cannot establish that any discriminatory actions were taken by Defendants on the basis of race and/or national origin.

Moreover, it is perplexing to even contemplate how Wells Fargo can discriminate against corporate borrowers.  Assuming again that there was an application for credit (the First Amended Complaint does not allege that the borrowers actually applied for a renewal or extension; it alleges merely that the Bank refused to further renew or extend the loan after maturity on January 1, 2010, *see, e.g.,* FAC ¶ 20), the applicants were the corporate entities who were the borrowers under the various loan documents.  Corporations by their very nature do not exhibit ethnic or racial attributes. Wells Fargo loaned these corporate borrowers millions of dollars and they thereafter defaulted on an agreement which required them to refinance or repay their

obligations in full prior to the maturity date.  There is no law in this country which requires Wells Fargo to further extend or renew defaulted commercial loans or refrain from exercising confession of judgment rights in the circumstances present here.  The unsupported allegation that the Bank's decision not to consider further renewal or extension of the loans and to confess judgment was somehow motivated by racial bias directed toward these corporate entities and their CEO is not plausible and must be dismissed.  *See Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555.

### 2.   Plaintiffs have failed to state a claim against J. Kent Thompson for a violation of the Virginia ECOA.

Plaintiffs have asserted a Virginia ECOA claim against J. Kent Thompson without presenting any factual support to stand behind this claim.  Instead, Plaintiffs simply restate Count I while essentially replacing "Wells Fargo" with "Mr. Thompson."  Count II is both unsupported by the facts and the law.

In addition to failing for the reasons stated above, Count II fails because Plaintiffs cannot assert an independent claim against J. Kent Thompson for a violation of the Virginia ECOA. Plaintiffs contend that Thompson is also a creditor subject to liability under Va. Code Ann. § 6.2-501 (formerly § 59.1-21.20(c)) because he helped to "arrange" the financing of the credit facilities.  (FAC ¶ 43).  This reading of the Virginia ECOA twists the definitions in the statute and extends its scope far beyond reasonable reach.  It is settled that, "[s]ince a corporation is an artificial entity, it can only act through its authorized agents, officers, and employees." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 151 F. Supp. 2d 723, 731 (W.D. Va. 2001); *see Isaac v. N.C. DOT*, 192 Fed. Appx. 197, 201 (4th Cir. 2006) ("An organization can only act through human beings.").  Wells Fargo's liability as a creditor, therefore, can only arise from the conduct of its employees.  Under Plaintiff's reading of the Virginia ECOA, however, all employees of financial institutions who "regularly arrange" for the provision of credit would

necessarily be subject to liability under the Virginia ECOA with respect to the *exact same conduct* which forms the basis of the allegations against their creditor employer, regardless of whether the employee was acting within the scope of his employment.  Upon belief, no reported decision, in Virginia or elsewhere, has imposed liability under the federal Equal Credit Opportunity Act or any of its state analogues on an individual employee of a creditor who has acted in a manner consistent with his ministerial role in arranging for the provision of credit.

Plaintiffs further contend that Defendant Thompson engaged in various alleged discriminatory activities: (1) "offensive[ly]" and loudly negotiating with Suthanthiran; (2) refusing to grant or negotiate renewals of the credit facilities to Plaintiffs; (3) somehow requiring Plaintiffs to agree to "onerous and unfair" loan conditions; (4) unreasonably filing the confessed judgments to enforce the terms of the credit facilities; (5) refusing to fairly negotiate loan terms with Plaintiffs; and (6) taking adverse action with respect to the Plaintiffs' loans, notwithstanding their credit worthiness.  (FAC ¶ 45).  Plaintiffs allege that Mr. Thompson is liable under Virginia ECOA because his conduct was ultra vires.  (*Id.*).

The mere utterance of "ultra vires" is not sufficient to create conduct outside the scope of employment and Plaintiffs' position is without merit.  "Virginia courts maintain a broad view of the scope of employment."  *Stith v. Thorne*, 488 F. Supp. 2d 534, 552 (E.D. Va. 2007); *see, e.g.*, *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1156 (4th Cir. 1997) (applying Virginia law and citing cases).  The test in Virginia to determine whether an act is committed within the scope of employment is: "(1) whether it was expressly or impliedly directed by the employer, or is naturally incident to the business; and (2) whether it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, and did not arise completely from some external, independent, and

personal motive on the part of the employee to do the act for his own account." *Smith v. Landmark Communications, Inc.*, 246 Va. 149, 152, 431 S.E.2d 306 (1993). The tortious nature of the conduct at issue is not determinative of this inquiry. *Id.*

In fact, it is settled that even intentional torts may fall within the scope of employment. *See*, *e.g.*, *Plummer v. Center Psychiatrists, Ltd.*, 252 Va. 233, 476 S.E.2d 172 (1996) (psychiatrist who sexually assaulted a patient could have acted within the scope of employment); *Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 249 Va. 39, 48, 453 S.E.2d 261, 266 (1995) ("willful and malicious acts" that were "outrageous and violative of [the] employer's rules" might nonetheless be within the scope of employment); *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1351 (4th Cir. 1995) (under Virginia law, even "a 'forbidden' or 'consciously criminal or tortious' act may still be within the scope of employment").

Pursuant to these principles, it is evident from the allegations in the First Amended Complaint that Mr. Thompson was at all times acting within the scope of his employment and that Wells Fargo, not Mr. Thompson, was the creditor under the definitions of the Virginia ECOA. All of the allegations that allegedly take Thompson's conduct outside of the scope of his employment relate specifically to his enforcement and/or negotiation of the terms of the relevant loans. (*See* FAC ¶ 45). This conduct is entirely consistent with Thompson's averred role as a commercial loan officer at Wells Fargo responsible for oversight of the Plaintiffs' credit facilities with the Bank. (*Id.* ¶¶ 6, 53).

Also, Plaintiffs allege that Well Fargo's discrimination against minority borrowers was part of its "established history" of doing business. (*Id.* ¶ 30). Therefore, there is no basis to allege that Thompson was acting outside of the scope of his employment when he allegedly enforced such "established" policies against Plaintiffs. *See*, *e.g.*, *Haigh v. Matsushita Elec. Corp.*, 676 F. Supp. 1332, 1349 (E.D. Va. 1987) ("Although the scheme [to fire the plaintiff due

to his age] may have been illegal, it was nonetheless, according to Haigh, devised by Panasonic officials to further Panasonic's interests (*e.g.*, younger sales personnel, reduced liability for pension benefits).  Having so alleged throughout his Complaint, Haigh cannot now assert, in response to the defendants' motion [to dismiss], that the individual defendants were operating outside the scope of their employment.").

For these reasons, Plaintiffs cannot assert a Virginia ECOA claim against Mr. Thompson, and Count II must be dismissed with prejudice.

### B.    Plaintiffs' Fraud and Constructive Fraud Claim (Count III) Fails as a Matter of Law.

The allegations in support of Plaintiffs' fraud claims are sparse, gross generalizations insufficient to form the basis of a valid fraud claim.  Under Virginia law, a plaintiff asserting a cause of action for actual fraud bears the burden of proving by clear and convincing evidence the following elements: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reasonable reliance by the party mislead, and (6) resulting damage to the party misled.  *See, e.g., Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994).  Similarly, to prevail on a claim for constructive fraud, Plaintiffs must prove by a showing of clear and convincing evidence that a false representation of a material fact was made innocently or negligently and the injured party was damaged as a result of his reliance upon the misrepresentation.  *State Farm Mut. Auto. Ins. Co. v. Remley,* 618 S.E.2d 316, 320 (Va. 2005).  Additionally, a finding of constructive fraud requires clear and convincing evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation. *Id.*

Furthermore, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The "circumstances" are "'the time, place, and

contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  *United States ex rel. Carter*, 2009 U.S. Dist. LEXIS 63649, at *21-22 (citation omitted) (stating that the purpose of Rule 9(b) is "to put the defendant on notice of the conduct complained of, to eliminate fraud actions in which all the facts are learned after discovery, to protect defendants from frivolous claims, and to protect defendants from the harm to their goodwill and reputation that may result from fraud claims"). Plaintiffs' allegations fail to satisfy Fed. R. Civ. P. 9(b).

In Count III, Plaintiffs allege that (1) in early 2007 and 2008, they met with Wachovia representatives and they failed to disclose that the Bank was allegedly in financial trouble; (2) a Wells Fargo executive testified before Congress that the Bank was "'making credit available to creditworthy borrowers'", (3) they "had a reasonable expectation that credit renewals would continued to be reasonably provided" to them, (4) they were "forced" to sign the Waiver and Amendment Agreement which contained "unconscionable terms and conditions", and (5) after the loans matured there was reasonable reliance on an expectation of renewal based upon the defendant's words and actions.  (FAC ¶¶ 54-58).  Plaintiffs contend that Defendants' "refusal to continue reasonable loan extensions under the circumstances as described above constitutes a misrepresentation and/or constructive misrepresentation of a material fact." (*Id.* ¶ 57).  Plaintiffs allege that these misrepresentations "induced the plaintiff's [sic] into accepting or guaranteeing loans that defendant solicited," (*Id.* ¶ 58), and that the loan terms were "unconscionable." (*Id.* ¶ 56).

First, Plaintiffs entered into the Waiver and Amendment Agreement voluntarily, knowingly, and with the advice of counsel.  Plaintiffs are far from unsophisticated borrowers. The First Amended Complaint alleges that they are "thriving, ongoing businesses" and touts a 37-year lending relationship with the Bank and its predecessor entities.  (FAC ¶ 58).  Moreover,

in the Waiver and Amendment Agreement, Plaintiffs acknowledged that they were represented

by counsel throughout the workout process and fully understood the contract they signed:

> (b)     Each obligor has freely and voluntarily entered into this Agreement after an
> adequate opportunity and sufficient period of time to review, analyze and discuss all terms
> and conditions of this Agreement and all factual and legal matters relevant hereto with
> counsel freely and independently chosen by it.  Each Obligor further acknowledges that it has
> actively and with full understanding participated in the negotiation of this Agreement after
> consultation and review with its counsel and that this Agreement has been negotiated,
> prepared and executed without fraud, duress, undue influence or coercion of any kind or
> nature whatsoever having been exerted by or imposed upon any party to this Agreement.

(FAC, Ex. 6, at 10).  Plaintiffs cannot now contend coercion, duress, or discriminatory terms in

order to escape the contractual terms they agreed to.

Similarly, Plaintiffs cannot now claim that the terms of the parties' voluntary agreements

were onerous as they waived the right to make such an assertion:

> (a)     Each Obligor has no defenses, affirmative or otherwise, rights of setoff,
> rights of recoupment, claims, counterclaims, actions or causes of action of any kind or nature
> whatsoever against the Lender or any past, present or future agent, attorney, legal
> representative, predecessor-in-interest, affiliate, successor, assign, employee, director or
> officer of the Lender, directly or indirectly, arising out of, based upon, or in any manner
> connected with, any transaction, event, circumstance, action, failure to act, or occurrence of
> any sort or type, whether known or unknown, which occurred, existed, was taken, permitted,
> or began prior to the execution of this Agreement and accrued, existed, was taken, permitted
> or begun in accordance with, pursuant to, or by virtue of the Obligations or any terms or
> conditions of the Loan Documents, or which directly or indirectly relate to or arise out of or
> in any manner are connected with the Obligations or any of the Loan Documents; TO THE
> EXTENT ANY SUCH DEFENSES, AFFIRMATIVE OR OTHERWISE, RIGHTS OF
> SETOFF, RIGHTS OF RECOUPMENT, CLAIMS, COUNTERCLAIMS, ACTIONS OR
> CAUSES OF ACTION EXIST OR EXTEND, SUCH DEFENSES, RIGHTS, CLAIMS,
> COUNTERCLAIMS, ACTIONS AND CAUSES OF ACTION ARE HEREBY FOREVER
> WAIVED, DISCHARGED AND RELEASED.

(*Id.*).  Plaintiffs additionally released any and all claims they had against Wells Fargo and its

affiliates and employees arising from the Agreement.  (*See id.*, Ex. 6, at 11).

Thus, in that Agreement, Plaintiffs waived the right to assert that they expected future

renewals or extensions.  They similarly waived and released the right to claim that the loan terms

were onerous, unconscionable or fraudulent.  Having waived any and all claims and defenses

when they signed the Agreement in order to obtain Wells Fargo's forbearance on the debt, they

cannot now assert that Wells Fargo fraudulently induced them to sign a contract with onerous terms.

Moreover, Plaintiffs' fraud claim confuses a misrepresentation with an expectation. The First Amended Complaint is replete with allegations that Plaintiffs expected the Bank to act in a certain manner. A claim of fraud cannot be predicated on actions a party expects to happen without the existence of a misrepresentation made to that party that those actions will happen. The First Amended Complaint is devoid of any allegation that the Bank told these borrowers at any time that after January 1, 2010, that the loans would be further extended or renewed. Plaintiff has failed to plead the essential element of fraud – the existence of a false representation.

Even if Plaintiffs' expectation constitutes a misrepresentation, Plaintiffs' allegations of fraud are too vague to be actionable. *See, e.g.*, *Woodring v. Board of Grand Trustees of Benevolent & Protective Order of Elks*, 633 F. Supp. 583, 592 (W.D. Va. 1986) ("It is settled law in Virginia that in order to amount to fraud, misrepresentations must not be vague and inconclusive."); *Saxby v. Southern Land Co.*, 63 S.E. 423, 424 (Va. 1909) ("Statements which are vague and indefinite in their nature and terms, or are merely loose, conjectural or exaggerated, go for nothing, though they may not be true, for a man is not justified in placing reliance upon them. An indefinite representation ought to put the person to whom it is made on inquiry."). Plaintiffs cannot simply refer to "words and actions" by the Bank; Plaintiffs must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Plaintiffs have not plead "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *United States ex rel. Carter*, 2009 U.S. Dist. LEXIS 63649, at *21-22.

In addition, Plaintiffs' fraud claims fail because an action for fraud cannot be predicated on a future promise.   Under Virginia law, a "[m]isrepresentation of a future promise can ordinarily not be a basis for fraud."  *See, e.g., Hessek v. N. Am. Morg. Ins. Servs.*, Civ. Action No: 2:02cv985, 2003 U.S. Dist. LEXIS 27361, *16-17 (E.D. Va. Oct. 16, 2003) (Morgan, J.) (citing *Sea-Land Serv., Inc. v. O'Neal*, 297 S.E.2d 647, 651 (Va. 1982)).   Furthermore, "where a defendant is alleged to have made a promise which he intended not to perform, 'his promise is a misrepresentation of *present* fact, and if made to induce the promisee to act to his detriment, is actionable as an actual fraud.'"  *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652, 663 (E.D. Va. 2002) (Cacheris, J.) (quoting *Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 537 (4th Cir. 1988)).   Again, to the extent that Plaintiffs' contentions constitute an allegation of a misrepresentation, Plaintiffs cannot advance a fraud claim based on the alleged "expectation that credit renewals would continue to be reasonably provided" to their businesses because the expectation they purportedly relied on was a future promise.  (FAC ¶ 54).

Without establishing the existence of a false representation, Plaintiffs cannot allege that they reasonably relied on a misrepresentation.   And, even if Plaintiffs' broad generalized assertion that they expected the loans to be renewed or extended could be construed as a misrepresentation, there can be no reasonable reliance as a matter of law, particularly in the present financial climate.  *White v. Potocska*, 589 F. Supp. 2d 631, 650 (E.D. Va. 2008) (Davis, J.) ("To prove reliance, a plaintiff must demonstrate that its reliance 'was reasonable and justified.'") (citation omitted).   Moreover, the Waiver and Amendment Agreement expressly required Plaintiffs to use their best efforts to refinance the credit facilities with another lender and pay off the obligations in full prior to the maturity date.  (FAC, Ex. 6 at 8).   There simply can be no reasonable reliance as a matter of law given the contractual terms the parties agreed to.

Lastly, Plaintiffs cannot plausibly claim that they suffered any damages as a result of a misrepresentation. Plaintiffs' damages, if any, were caused by their own defaults under commercial loan agreements which required repayment in full by January 1, 2010. Plaintiffs failed to comply with their contractual obligations and the cry of fraud is disingenuous. *See Murray v. Hadid*, 385 S.E.2d 898, 903 (Va. 1989) ("[I]n order to recover under a cause of action for fraud, a plaintiff must prove damages which are caused by his detrimental reliance on a defendant's material misrepresentation.") (citing *Winn v. Aleda Const. Co.*, 315 S.E.2d 193, 195 (Va. 1984)).

For these reasons, Count III must be dismissed with prejudice.

**C.      Plaintiffs Have No Claim for Equitable Estoppel (Count IV).**

In Count IV, Plaintiffs purport to allege a claim for equitable estoppel. The doctrine of equitable estoppel is a "'well-established concept invoked by courts to aid a party who, in good faith, has relied, to his detriment, upon the representations of another.'" *Datastaff Tech. Group, Inc. v. Centex Constr. Co.*, 528 F. Supp. 2d 587, 593 (E.D. Va. 2007) (Ellis, J.) (quoting *United States ex rel. Humble Oil & Ref. Co. v. Fid. & Cas. Co. of New York*, 402 F.2d 893, 897 (4th Cir. 1968)). Equitable estoppel, however, may be "raised as a defense but not as an independent cause of action." *Vecco Constr. Indus. v. Erkiletian*, 3 Va. Cir. 315, 319 (Alexandria 1985). Similarly, in Count IV, Plaintiffs blithely state that the "defendant has unclean hands in this matter due to it's [sic] failure to extent [sic] the loans . . ." (FAC ¶ 71); *Monger v. Herring*, 79 Va. Cir. 470, 475 (Rockingham 2009) (holding that the doctrine of unclean hands, like equitable estoppel, is a "defense[] and not [an] affirmative cause[] of action.")

Not only has equitable estoppel been raised as an independent cause of action in Plaintiffs' First Amended Complaint, but it has also been alleged to request injunctive relief. Specifically, Plaintiffs state that Defendants should be "*equitably restrained* from asserting its

right to enter or foreclose on the judgment." (FAC ¶ 70) (emphasis added). However, Plaintiffs have not satisfactorily shown they are entitled to injunctive relief.

Plaintiffs' equitable estoppel claim merely recasts the unsupported fraud claim. The allegations in support of Count IV, like the allegations in support of fraud, fail to establish that Wells Fargo falsely represented or concealed a material fact. When Plaintiffs signed the Waiver and Amendment Agreement, they acknowledged they did so voluntarily and understood the terms, and waived and released certain rights, claims and defenses. Plaintiffs cannot now come before the Court and claim that the Agreement was onerous and unfair or that they lacked an understanding of what they were signing and the ramifications of signing it. It is Plaintiffs who are estopped as a matter of law from bringing this litigation by virtue of the Agreement they signed and not the other way around. Because equitable estoppel is a defense and even if it was an affirmative claim Plaintiffs have not pleaded facts to support a right of recovery, Count IV must be dismissed with prejudice.

**D.    Count V Must Be Dismissed Because Plaintiffs Have Not Stated a Cause of Action for Economic Durress.**

Count V of the First Amended Complaint must be dismissed because Plaintiffs have stated no cause of action for "economic duress." Duress is a defense that has been "extremely limited by Virginia courts." *Eddie v. Auto Truck Transp. Corp.*, No. 7:06CV00750, 2007 U.S. Dist. LEXIS 46603, *12 (W.D. Va. June 27, 2007); *Seward v. American Hardware*, 161 Va. 610, 171 S.E. 650, 662 (1933)). ("Economic duress is "not readily accepted as an excuse" to bar the enforcement of a contract under Virginia law.") Upon belief, no Virginia state court has ever recognized a cause of action for economic duress or established the elements of such a claim. A defense of duress is founded on the assertion that any "apparent consent" is unreal because of force or fear caused by threats. *Eddie*, 2007 U.S. Dist. LEXIS 46603, *12.

Even if such a cause of action was recognized in Virginia, Plaintiffs' claim for economic duress fails as a matter of law.  In support of their economic duress claim, Plaintiffs only state that "[i]n order to prevent foreclosure of its assets and continue its business operations the plaintiffs had to capitulate to the defendants demands and agree to the July 31, 2009 Waiver and Amendment Agreement."  (FAC ¶ 81).  Plaintiffs seek to have the Waiver and Amendment Agreement rescinded based on this allegation.  There are no facts stated in support of this claim.

First, Plaintiffs have not articulated that any threats were made by Defendants.  Also, Plaintiffs neither state what assets could have been foreclosed upon nor how Plaintiffs' business operations could have been halted had the Waiver and Amendment Agreement not been signed. These borrowers were free to refinance with another lender at any time, and the Waiver and Amendment Agreement expressly required them to do so.  But even if Plaintiffs could allege a claim for economic duress, when they signed the Waiver and Amendment Agreement, they acknowledged that they were entering into the Agreement knowingly, voluntarily with the advice of legal counsel, and without "fraud, duress, undue influence or coercion of any kind or nature." (FAC, Ex. 6, at 10).  Thus, their claim is implausible on its face.  Plaintiffs signed the Waiver and Amendment Agreement on July 31, 2009.  Plaintiffs waited until after the entry of the confessions of judgment – more than a year after entering into the Agreement – to challenge the terms they readily signed. *See Butz v. Walker,* 24 Va. Cir. 259, 259-260 (Fairfax County 1991) (finding that economic duress defense failed because repudiation had not been shown). Plaintiffs' First Amended Complaint contains no allegations supporting the claim that the Waiver and Amendment Agreement was entered into under economic duress, and such a claim is clearly implausible.

   **E.     Plaintiffs Have Failed to State a Claim for Breach of Fiduciary Duty Against Defendants (Count VI).**

Count VI must be dismissed because Plaintiffs have no claim for breach of fiduciary duty against Defendants.  The elements of a breach of fiduciary duty claim are: (1) a fiduciary duty; (2) breach; and (3) damages sustained.  *See, e.g., Carstensen v. Chrisland Corp.*, 247 Va. 433, 444, 442 S.E.2d 660, 666.  "A fiduciary relationship exists where 'special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence.'"  *Rossman v. Lazarus*, 1:08cv316, 2009 U.S. LEXIS 1741, *25 (E.D. Va  Jan. 9, 2009) (quoting *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 645 S.E.2d 290, 295 (2007)).  The statute of limitations for a breach of fiduciary duty under Virginia law is two years, and the cause of action accrues "at the time of the alleged injury, not the date of discovery."  *See, e.g.*, *Tabler v. Litton Loan Servicing, LP*, No. 3:09-CV-146, 2009 U.S. Dist. LEXIS 70768, *9-10 (E.D. Va. Aug. 12, 2009) (citing Va. Code Ann. § 8.01-248); *Katz v. Holland & Knight LLP*, No. 1:08cv1137, 2009 U.S. Dist. LEXIS 10721, *18-19 (E.D. Va. 2009) (Ellis, J.) ("[A] breach of fiduciary duty claim . . . is subject to Virginia's general two-year statute of limitations.") (citing Va. Code Ann. § 8.01-248 (providing general two-year statute of limitations where not otherwise prescribed by statute)).

Plaintiffs attempt to impute some fiduciary duty on Defendants by reference to a 2006 interest rate swap transaction.  Plaintiffs did not attach the swap agreement to the First Amended Complaint.  Furthermore, neither the swap agreement nor Defendant Thompson's role in it are described in any detail.  Plaintiffs simply state that "defendants, each and all of them had a fiduciary duty toward the plaintiffs in light of their sale of interest rate swap agreement s [sic] that were confirmed on December 8, 2006 and February 23, 2007 respectively."  (FAC ¶ 84). Plaintiffs state that Defendants assumed "a fiduciary duty to the plaintiffs once they marketed and sold the swap agreement to plaintiffs."  (*Id.* ¶ 88).  However, Plaintiffs fail to explain the

nexus between the swap transaction and the Waiver and Amendment Agreement, which they state must be rescinded because of breach of fiduciary duty.

Plaintiffs claim that "defendants sold plaintiffs a complicated interest rate derivative product that resulted in a substantial profit to the defendants at the plaintiff's expense." (*Id.* ¶ 88). Such a claim misconstrues how interest rate swap agreements actually work. An interest rate swap agreement is a vehicle used by commercial parties to obtain the benefit of fixed interest rates in an economic climate where floating rates might fluctuate significantly. A recent federal opinion has provided the following explanation of such swap agreements:

> "A "swap" is a contract between two parties ("counterparties") to exchange ("swap") cash flows at specified intervals, calculated by reference to an index. Parties can swap payments based on a number of indices including interest rates, currency rates and security or commodity prices.
>
> The "plain-vanilla" interest rate swap, the simplest and most common type of swap contract, obligates one counterparty to make payments equal to the interest which would accrue on an agreed hypothetical principal amount ("notional amount"), during a given period, at a specified fixed interest rate. The other counterparty must pay an amount equal to the interest which would accrue on the same notional amount, during the same period, but at a floating interest rate. If the fixed rate paid by the first counterparty exceeds the floating rate paid by the second counterparty, then the first counterparty must pay an amount equal to the difference between the two rates multiplied by the notional amount, for the specified interval. Conversely, if the floating rate paid by the second counterparty exceeds the fixed rate paid by the first counterparty, the fixed-rate payor receives payment. The agreed hypothetical or "notional" amount provides the basis for calculating payment obligations, but does not change hands.

*Yountville Investors, LLC v. Bank of America, N.A.*, Case No. C08-425RSM, 2009 U.S. Dist. LEXIS 67425, *2-6 (W.D. Wash. July 28, 2009) (quoting *Thrifty Oil Co. v. Bank of America Nat. Trust and Sav. Ass'n*, 322 F.3d 1039, 1042-43 (9th Cir. 2003)).

Plaintiffs' breach of fiduciary duty claim fails for many reasons. First, to the extent that the breach of fiduciary duty claim is based on the swap agreement, Count VI is barred by the statute of limitations. Plaintiffs state that the swap agreements "were confirmed on December 8, 2006 and February 23, 2007 respectively." (FAC ¶ 84). If any breach of fiduciary duty occurred, it occurred no later than when Wells Fargo "sold the swap agreement to plaintiffs."

(*Id.* ¶ 88).   In other words, by Plaintiffs' own allegations, Huestis's breach of fiduciary duty claim accrued no later than February 23, 2007.   More than two years have expired since a breach of fiduciary duty claim accrued.   As such, Count VI is barred by the statute of limitations.

Even if the statute of limitations had not expired, Count VI fails as a matter of law.   First, the existence of a "creditor-debtor" or "lender-borrower" relationship does not in itself create a fiduciary relationship between the parties.   *See, e.g.*, *Rossman*, 2009 U.S. LEXIS 1741, *26. Plaintiffs allege nothing in the First Amended Complaint that establishes the existence of a special relationship between Huestis and Wells Fargo and/or Mr. Thompson.   In fact, Plaintiffs fail to articulate any factual content about the swap agreement.   Indeed, swap agreements like these are arm's length transaction, and Plaintiffs cannot allege that the swap agreement created a fiduciary relationship between Plaintiffs and Defendants.[5]   *K3C, Inc. v. Bank of America, N.A.*, 204 Fed. Appx. 455 (5th Cir. 2006) (finding that no fiduciary relationship existed between a lender and borrower when the parties entered into a swap agreement); *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 933 (6th Cir. Tenn. 2006) (upholding dismissal of professional negligence claim because plaintiff had "not demonstrated that defendants owed it a legal duty to advise it on the appropriateness of the swap transactions distinct from the agency and breach of fiduciary duty claims"); *St. Matthew's Baptist Church v. Wachovia Bank Nat'l Ass'n*, No. 04-4540, 2005 U.S. Dist. LEXIS 46607, *27-32 (D.N.J. May 18, 2005) (finding that no fiduciary relationship existed out of the swap agreement because the plaintiff had not shown that it and the bank had anything other debtor-creditor relationship and because the swap agreement "specifically disclaim[ed] the existence of a fiduciary relationship"); *Mueller v. Thomas*, 84 Fed. Appx. 273, 275-276 (4th Cir. 2003) ("[A] contract between sophisticated

---

[5] Again, Plaintiffs failed to attach the relevant swap documentation to the First Amended Complaint, presumably because the agreements are **REPLETE** with language acknowledging the arms length nature of the transaction.

commercial parties transacting at arm's length generally does not create a fiduciary relationship under Virginia state law.") (citing *Diaz Vicente v. Obenauer*, 736 F. Supp. 679, 695 (E.D. Va. 1990)).

Lastly, Plaintiffs' other claimed breaches of fiduciary duty have no support in the law. Again, Plaintiffs borrowed money from Wells Fargo, and this relationship was not fiduciary in nature. *Rossman*, 2009 U.S. LEXIS 1741, *26; *see also Fryfogle v. First Nat'l Bank of Greencastle*, 2009 U.S. Dist. LEXIS 21347, *22-23 (W.D. Va. Mar. 17, 2009) ("'[T]he legal relationship between a borrower and  a bank is a contractual one of debtor and creditor and does not create a fiduciary relationship between the bank and its borrower or creditor.'") (citations omitted).   For this reason, Plaintiffs cannot assert a breach of fiduciary duty claim for (1) "[u]nreasonably refusing to grant, or even negotiate renewals or extensions of loans . . ."; (2) "[r]equiring plaintiffs to pay off the Heustis [sic] 10 year term note . . ."; and (3) "[u]nreasonably requiring the plaintiffs to enter into the onerous Waiver and Amendment Agreement."   (FAC ¶ 92).  Plaintiffs have alleged no facts that support a claim that these were fiduciary duties of Wells Fargo or Mr. Thompson.  Therefore, Plaintiffs' breach of fiduciary duty claim fails as a matter of law and must be dismissed with prejudice.

### F.      Plaintiffs Cannot Assert a Claim for Negligence (Count VII).

Plaintiffs' negligence claim is sloppily pleaded and is insufficient as a matter of law.  To state a cause of action for negligence, Plaintiffs must plead the existence of "a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage" to the Plaintiffs.  *See, e.g.*, *Blue Ridge Serv. Corp. v. Saxon Shoes, Inc.*, 271 Va. 206, 218, 624 S.E.2d 55, 62 (2006).  Plaintiffs have not alleged any common law duty owed to them by the Bank.  "Tort law is not designed . . . to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement."

*Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.,* 236 Va. 419, 374 S.E.2d 55, 58 (1988); *see also Barnette v. Brook Road, Inc.*, 429 F. Supp. 2d 741, 750 (E.D. Va. 2006); *Carytown Jewelers v. ADT Sec. Servs., Inc.*, Civ. Action No. 3:05cv84, 2005 U.S. Dist. LEXIS 9147, at *7 (E.D. Va. May 17, 2005) (holding that "[b]ecause the duty allegedly performed in a negligent way was created by contract, there was no negligence claim available under Virginia law" and noting that tort remedies were not available in Virginia to recover for losses caused by breach of contract) (citing *Richmond Metro. Auth. v. McDevitt Street Bovis*, 256 Va. 553, 507 S.E.2d 344, 348 (1998)).

Even assuming that one can understand what standard of care is established by the "duty to act reasonably relative to all their interactions with the Plaintiffs," Plaintiffs' negligence claim fails. Plaintiffs allege that "Defendants, as financial advisors to plaintiffs, had a duty to act reasonably relative to all their interactions with the plaintiffs," (FAC ¶ 96), but Plaintiffs have alleged no facts that establish that Defendants were "financial advisors" or that the Plaintiffs and Wells Fargo were in anything but a borrower-lender or debtor-creditor relationship. Moreover, Plaintiffs are mistaken about the source of any duties owed to them by Defendants. Any duties owed to Plaintiffs by Wells Fargo during the course of the parties' relationship arose out of the "series of contracts" Plaintiffs allege they entered into with Wells Fargo. (*Id.* ¶ 2). *Hughes v. Bank of Am.*, No. 5:07CV00109, 2008 U.S. Dist. LEXIS 26007, *6 (W.D. Va. Mar. 31, 2008) (dismissing a negligence claim where the plaintiffs' allegations could not establish a common law duty on the part of a bank); *see Wert v. Jefferds Corp.*, No. 08-1755, 2009 U.S. App. LEXIS 9750, *4 (4th Cir. May 6, 2009) ("[A] duty that arises solely from a contract can only provide the basis for a contract claim; it cannot provide the basis for a negligence claim."). Contrary to Plaintiffs' allegations, Wells Fargo did not have a duty to "grant, or even negotiate renewals or extensions of" loans or lines of credit that had matured. (FAC ¶ 97). Similarly, Wells Fargo had

no common law duty to forbear from exercising its bargained-for rights under the parties' contracts.   Indeed, Plaintiffs have not alleged a negligence claim in the First Amended Complaint, and Count VII must be dismissed.

## IV.   J. KENT THOMPSON MUST BE DISMISSED FROM THIS ACTION BECAUSE PLAINTIFFS HAVE NO BASIS FOR RECOVERY AGAINST HIM

Defendant Thompson was named as an individual defendant for the improper purpose of harassment and thwarting diversity jurisdiction.   There simply is no reasonable basis for Plaintiffs to expect recovery from him.   There are no specific allegations in the Complaint or the First Amended Complaint of conduct by Mr. Thompson in his individual capacity, undertaken outside of the scope of his employment with the Bank, which would give rise to any of the causes of action alleged.   Mr. Thompson is a career bank officer whose reputation has been tarnished by Plaintiffs' frivolous allegations.   The generalized assertion that Mr. Thompson has discriminated against these commercial borrowers or made fraudulent representations was not made in good faith and was for purposes of harassment in violation of Fed. R. Civ. P. 11.

A complaint must show that "that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"   *Twombly*, 550 U.S. at 555 (citations omitted).   Not only are Plaintiffs' pleadings devoid of any allegation that Thompson acted outside of the scope of his employment for the Bank, but conspicuously absent from the First Amended Complaint is any allegation of specific conduct by Mr. Thompson that could remotely be viewed as discriminatory or fraudulent.   All that can be inferred from the allegations is that Plaintiffs communicated with Thompson about the credit facilities.   With regard to the Virginia ECOA claim, no particularized acts of discrimination by Thompson are alleged, even if he could be liable individually under the ECOA.   There are no allegations in the First Amended Complaint which accuse Mr. Thompson of undertaking any specific discriminatory acts or engaging in conduct exhibiting racial bias.   Even if there were

28

such allegations, because Mr. Thompson is a Bank officer and employee acting within the scope of his employment, there would be no individual liability; any vicarious liability would flow to the Bank. *See Bryson on Virginia Civil Procedure*, § 5.02(8) (4th ed. 2005) ("An agent having no personal interest in the affairs between his principal and third parties should not be made a party plaintiff or defendants, as a general rule."). Thus, the claim against him individually fails as a matter of law.

The same is true of Plaintiffs' other claims against Defendant Thompson. Mr. Thompson never had a loan agreement with these borrowers so cannot be liable individually for any alleged damages stemming from the termination of the lending relationship or the enforcement of contractual rights. Yet, Plaintiffs' First Amended Complaint asserts claims against "all Defendants" without illustrating how Mr. Thompson is liable for those claims or relief can be granted against him. There are no allegations of any misrepresentations by Mr. Thompson to support a claim of fraud. Similarly, Plaintiffs cannot assert claims for breach of fiduciary duty and negligence against Mr. Thompson. As explained at length in this memorandum and in Defendants' Opposition to Plaintiffs' Motion to Remand, Mr. Thompson was acting in the scope of his employment with Wells Fargo, and no independent duty could have been owed to Plaintiffs by Mr. Thompson during the course of his employment.

The claims are frivolous, unfounded, and sanctionable. The First Amended Complaint should be dismissed with prejudice against Mr. Thompson.

## CONCLUSION

For the reasons stated above, Wells Fargo Bank, N.A. and J. Kent Thompson respectfully request that Plaintiffs' First Amended Complaint be dismissed with prejudice.

29

**WELLS FARGO BANK, N.A.**

**and**

**J. KENT THOMPSON**

/s/ Mary C. Zinsner
Mary Catherine Zinsner (VSB No. 31397)
mary.zinsner@troutmansanders.com
S. Mohsin Reza (VSB No. 75347)
mohsin.reza@troutmansanders.com
TROUTMAN SANDERS LLP
1660 International Drive, Suite 600
McLean, VA  22102-3805
Telephone:  703-734-4334
Facsimile:  703-734-4340

Jon S. Hubbard (VSB No. 71089)
jon.hubbard@troutmansanders.com
Timothy J. St. George (VSB No. 77349)
tim.stgeorge@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
P.O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1406
Facsimile: (804) 698-5186

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of October, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system.  I further certify that on the 7th day of October, 2010, I will send the foregoing by hand delivery to:

Shawn R. Weingast, Esq.
James Brady, Esq.
Best Industries, Inc.
7643 Fullerton Road
Springfield, VA 22153
Tel:  703-451-2378
sweingast@teambest.com
*Counsel for Plaintiffs*

/s/ Mary C. Zinsner
Mary Catherine Zinsner (VSB No. 31397)
mary.zinsner@troutmansanders.com
S. Mohsin Reza (VSB No. 75347)
mohsin.reza@troutmansanders.com
TROUTMAN SANDERS LLP
1660 International Drive, Suite 600
McLean, VA  22102-3805
Telephone:  703-734-4334
Facsimile:  703-734-4340

*Counsel for Defendants*

430367v1