## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

BEST MEDICAL INTERNATIONAL, INC., *et al.*,

     *Plaintiffs,*

v.
                                 **Case No. 1:10cv988 (LOG/TRJ)**

WELLS FARGO INC, NA, as successor in
interest to WACHOVIA BANK, N.A., *et al.*,

     *Defendants.*

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO
## PLAINTIFFS' MOTION TO REMAND

Defendants, Wells Fargo Bank, N.A. ("Wells Fargo" or the "Bank"), incorrectly named in the First Amended Complaint as Wells Fargo Inc., NA, and J. Kent Thompson ("Thompson"), by counsel, state as follows for their memorandum in opposition to Plaintiffs' Motion for Remand.

### INTRODUCTION

Wells Fargo and its predecessor by merger, Wachovia Bank, National Association, have a commercial banking relationship with Plaintiffs Best Medical International Inc., Huestis Machine Corp., Best Industries, Inc., and Gunston Hall Realty, Inc. (collectively, "Borrowers"). (FAC ¶ 11). Plaintiff Krishnan Suthanthiran is the sole owner, sole shareholder, and chief executive officer of Best Medical, Huestis, Gunston Hall, and Best Industries. (*Id.* ¶ 5). Thompson, a citizen of the Commonwealth of Virginia, is the commercial loan officer with Wells Fargo who was assigned to the loan relationship with the Borrowers after Wachovia merged into Wells Fargo in 2009. (*Id.* ¶¶ 6, 16, 38).

Over various periods of time, Wells Fargo allegedly provided Plaintiffs with term loans and lines of credit.  (*Id.* ¶ 11).  The following credit facilities were extended by Wells Fargo: (1) a term loan to Huestis for $5 million; (2) a term loan of $2 million to Huestis; (3) a line of credit to Gunston Hall Realty for $5 million; and (4) a line of credit to Best Medical International for $3 million (collectively, the "credit facilities").  (*Id.* ¶ 12).  Upon their expiration, the parties were not able to agree on terms for renewal or further extension of the credit facilities.  (*See* FAC ¶ 20).  On June 30, 2010, due to events of default, Wells Fargo exercised its right to confess judgment under the credit facilities in the Circuit Court of Fairfax County.  (*Id.* ¶¶ 27, 56).

On August 3, 2010, Plaintiffs filed motions to set aside the Confessions of Judgments in the Circuit Court of Fairfax County.  (*See* Mot. Remand at 1).  Plaintiffs simultaneously filed the present action and proceeded to effect service of process.  On August 30, 2010, Defendants timely filed their Notice of Removal (Docket No. 1).  On September 7, 2010, Defendants filed their Motion to Dismiss.  (Docket No. 3).  On September 27, 2010, Plaintiffs filed their Motion to Remand (Docket No. 15), along with the First Amended Complaint (Docket No. 19).

The First Amended Complaint names both Wells Fargo and the non-diverse Thompson as Defendants.  The First Amended Complaint purports to assert the following claims:  (i) Violation of the Virginia Equal Credit Opportunity Act as to Defendant Wells Fargo Bank, N.A. (Count I); (ii) Violation of the Virginia Equal Credit Opportunity Act as to Defendant J. Kent Thompson (Count II); Fraud and/or Constructive Fraud as to all Defendants (Count III); (iv) Equitable Estoppel as to all Defendants (Count IV); (v) Economic Duress (Count V); (vi) Breach of Fiduciary Duty as to all Defendants (Count VI); (vii) Negligence as to all Defendants (Count VII).  Plaintiffs have now moved to remand this matter on the basis of incomplete diversity of citizenship.  (Mot. Remand at 3).

Thompson is fraudulently joined to this action.  There is no reasonable possibility of a successful claim against Thompson and, given the duplicate claims asserted against Wells Fargo, Plaintiffs have no real intention of obtaining a joint judgment.  He should therefore be dismissed from this action.  Alternatively, Thompson is a nominal party.  For these reasons, his citizenship should be disregarded when assessing whether complete diversity is present.

### STANDARD OF REVIEW

"A defendant may remove a case from state court to federal court when the defendant can show by a preponderance of the evidence that the federal court has jurisdiction."  *Schwenk v. Cobra Mfg. Co.*, 322 F. Supp. 2d 676, 678 (E.D. Va. 2004).  In reviewing a motion to remand, the Court must be mindful that if a case is remanded, "the defendant forever loses his right to a federal forum as well as any possibility of a review of the court's decision to remand."  *Ford-Fisher v. Stone*, 2007 U.S. Dist. LEXIS 4354, at *6 (E.D. Va. Jan. 22, 2007).  "[A] defendant's right to remove to federal court has been held to be just as important as the plaintiff's choice in forum when filing the original complaint."  *Jones v. Target Store, Inc.*, 2009 U.S. Dist. LEXIS 36967, at *5 (E.D. Va. Apr. 30, 2009).  Thus, a court should "scrutinize every attempt to deprive a defendant of his right to a federal forum," remanding only when "it is *clear* that jurisdiction is improper at the federal level."  *Ford-Fisher*, 2007 U.S. Dist. LEXIS at *7 (internal citations omitted) (emphasis added).  This Court "may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal courts of the protection of their rights in those tribunals."  *Id.* (citing *Alabama Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 218 (1906)).

**ARGUMENT**

**I.      Thompson has been fraudulently joined to this action and his citizenship should be disregarded.**

The "fraudulent joinder" doctrine is one way that courts ensure that removal procedure is fairly applied. *Linnin v. Michielsens*, 372 F. Supp. 2d 811, 817 (E.D. Va. 2005).  The citizenship of parties that are "fraudulently joined" is ignored when assessing whether complete diversity is present. *Boss v. Nissan N. Am., Inc.*, 228 Fed. Appx. 331, 334-35 (4th Cir. 2007); *accord Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).  Therefore, "[w]here a non-diverse defendant is named in the initial state court complaint as part of a tactical effort to defeat diversity jurisdiction, the fraudulent joinder doctrine permits district courts to assume jurisdiction over a case even if there are named defendants who lack diversity at the time the case is removed." *Linnin*, 372 F. Supp. 2d at 817 (citing *Mayes*, 198 F.3d at 461).

The term "fraudulent joinder" is, in numerous ways, a misnomer, as it does not require fraud.  *See, e.g.*, *Mayes*, 198 F.3d at 461 n.8.  It is more accurately characterized as "the rubric applied when a court finds either that no cause of action is stated against [a] nondiverse defendant, or in fact no cause of action exists.  In other words, a joinder is fraudulent if there is no real intention to get a joint judgment, and there is no colorable ground for so claiming." *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990) (citation omitted).  Properly formulated, therefore, the test for fraudulent joinder is whether "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant" and/or no real intention of a plaintiff to seek a joint judgment against that defendant. *Linnin*, 372 F. Supp. 2d at 819; *see, e.g.*, *Wiles v. Boat/U.S., Inc.*, 2008 U.S. Dist. LEXIS 12928, at *8-9 (E.D. Va. Feb. 20, 2008) (applying the "no

reasonable basis" test to determine fraudulent joinder) (citing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)).

In *Linnen*, for instance, this Court concluded that a mechanic was fraudulently joined in a case where he was sued, along with his employer, an aerial lift manufacturer, by the estate of an employee who died in an accident involving an aerial lift manufactured by the defendant on various product liability, common law negligence, and failure to warn theories. *Linnen,* 372 F. Supp. at 825. This Court found that the facts alleged did not support any finding that the mechanic had actual or constructive notice of the dangers of the aerial lift and the mechanic did not instruct or command the decedent to take any action. *Id.* Moreover, any duties the mechanic owed were to his employer, and not the decedent. *Id.* This Court further found that the plaintiff had no intention of getting a joint judgment against the mechanic, stating:

> Assuming, for the sake of argument, that Defendant Michielsens could be found negligent in this case, it will be Hertz, the deep-pocket employer, who will ultimately be responsible for any damages …"Given the relative financial positions of most companies versus their employees, the only time an employee is going to be sued is when it serves a tactical legal purpose, like defeating diversity." In this case, Plaintiff has nothing to gain from joining Defendant Michielsens except for defeating diversity.

*Id.* at 823-24 (citations omitted).

The same conclusion obtains here. There is no reasonable possibility of a judgment against Thompson, and the Defendants cannot seriously be intent on obtaining a joint judgment. There can be no question that Thompson was named as a defendant to destroy diversity and he should be dismissed due to fraudulent joinder.

### A.   Plaintiffs have no colorable basis for the assertion of an independent claim against Thompson.

At bottom, there is no basis in either law or fact to reasonably conclude that Plaintiffs may recover against Thompson individually. Indeed, the claims against the Defendants are most

attenuated and incredible with regard to the alleged conduct of Thompson. The sum and substance of the conclusory allegations against Thompson is as follows: (1) he "ignored" Plaintiffs' request for a meeting with the individual responsible for making the decision not to further renew or extend the loans, FAC ¶ 24; (2) Plaintiff Suthanthiran told Thompson that he believed the Bank's actions were the result of racial or national origin discrimination and "[t]he defendant bank did no meaningful investigation" of the complaint, *id.* ¶ 26; (3) Thompson "demonstrated animosity" and communicated with Suthanthiran "in a loud, rude, offensive manner" and purportedly did not demonstrate this same conduct when negotiating with non-minority persons, *id.* ¶ 45; and (4) Thompson "unfairly" refused to negotiate loan terms and.or agreed to line of credit extensions, *id.*

Plaintiffs cannot maintain a viable claim against Thompson with regard to any of the causes of action asserted in the First Amended Complaint.

### i.      No reasonable possibility exists for a finding of violation of the Virginia ECOA by Thompson.

The Virginia ECOA provides that it "shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction: . . . [o]n the basis of race, color, religion, national origin, sex or marital status, or age (provided that the applicant has the capacity to contract)." Va. Code § 6.2-501 (formerly Va. Code § 59.1-21.21:1).[1] Substantively, "[t]he provisions of the Virginia [ECOA] generally parallel those of" the federal Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, *et seq.*[2] *Eure v. Jefferson Nat'l Bank*, 248 Va. 245, 250 n.4, 448 S.E.2d 417 (1994).

---

[1] On October 1, 2010, amendments to the Virginia ECOA were made effective. The General Assembly of Virginia repealed and recodified the Virginia ECOA to Title 6.2 of the Code of Virginia.

[2] Plaintiffs' transparent desire to avoid federal court is also evidenced by their assertion of violation of the Virginia ECOA, instead of the virtually identical federal Equal Credit Opportunity Act, which is the more typical consumer credit claim, even in Virginia.

The Virginia ECOA defines an "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor, indirectly by use of an existing credit plan for an amount exceeding the previously established credit limit." *Id.* Va. Code § 6.2-500 (formerly Va. Code § 59.1-21.20(a)).[3] "Credit" is further defined as the "right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefore." *Id.* Va. Code § 6.2-500 (formerly Va. Code § 59.1-21.20(b)). Under the statute, a "creditor" is defined as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." *Id.* Va. Code § 6.2-500 (formerly Va. Code § 59.1-21.20(c)). "Person" is defined as "a natural person, a corporation, government or governmental subdivision or agency, trust, estate, partnership, cooperative, or association." *Id.* Va. Code § 6.2-500 (formerly Va. Code § 59.1-21.20(c)). In the First Amended Complaint, Plaintiffs allege that Thompson is a "natural person who *regularly arranges* for the extension, renewal or continuation of credit and/or participates in the decision to extend, renew or continue credit." (FAC Compl,. ¶ 43) (emphasis added). On this basis, Plaintiffs contend that Thompson is a "creditor" subject to individual liability under the Virginia ECOA. This argument must be rejected.

There can be no doubt that the true creditor to which the Plaintiffs are indebted is Wells Fargo. None of the various loan documents attached to the First Amended Complaint are by and

---

[3] Defendants are twisting the definitions of the Virginia ECOA to make a square peg fit through a round hole. Assuming for purposes of argument that Defendants even applied for a further extension of credit (the First Amended Complaint alleges that they expected a further extension but there is no allegation of an application or review process), the applicants here were the corporate borrowers under the various credit facilities. It is perplexing to contemplate how a creditor could ever discriminate against a corporate borrower on the basis of race or national origin. Plaintiff Suthanthiran, who is allegedly of Indian descent, was not the applicant with respect to the loans.

between Thompson and the Defendants; rather, the executing parties are Wells Fargo and the Defendants. Plaintiffs also allege that "defendant Wells Fargo Bank, NA" refused to agree to renewals or extensions of the debt, *e.g.*, FAC ¶ 17. And, paragraph 45 of the First Amended Complaint contains a litany of alleged offenses by Thompson, but all are predicated on general lending practices of Wells Fargo, in its capacity as creditor, and not any specific conduct by Thompson. *See, e.g., id.* ¶ 45 ("Mr. Thompson refused to grant. . . extensions of loans and lines of credit to businesses with minority owners"; "Mr. Thompson required minority business owners . . . to agree to onerous and unfair conditions"). The allegation that Thompson retaliated against Suthanthiran for making a Civil Rights Complaint by confessing judgment is ludicrous; it was Wells Fargo, and not Thompson, which confessed judgment. Thus, Wells Fargo is the entity that "extended" credit to the Defendants under the first prong of the definition contained in Va. Code § 59.1-21.20(c), and Thompson is not individually liable under the Act.

Plaintiffs attempt to argue, however, that Thompson is also a creditor subject to liability under Va. Code § 59.1-21.20(c) due to the fact that he helped to "arrange" the financing of the credit facilities. (FAC ¶ 43). This reading of the Virginia ECOA would extend its scope far beyond its reasonable reach. It is settled that, "[s]ince a corporation is an artificial entity, it can only act through its authorized agents, officers, and employees." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 151 F. Supp. 2d 723, 731 (W.D. Va. 2001); *see Isaac v. N.C. DOT*, 192 Fed. Appx. 197, 201 (4th Cir. 2006) ("An organization can only act through human beings."). Wells Fargo's liability as a creditor, therefore, can only arise from the conduct of its employees. Under Plaintiffs' reading of the Virginia ECOA, however, all employees of financial institutions who "regularly arrange" for the provision of credit would necessarily be subject to individual liability under the Virginia ECOA with respect to the *exact same conduct* which forms the basis

of the allegations against their creditor employer, regardless of whether the employee was acting within the scope of his employment.  Plaintiffs have failed to cite any reported decision and, upon belief, there is no reported decision, in Virginia or elsewhere, which has imposed liability under the federal Equal Credit Opportunity Act or any of its state analogues on an individual employee of a creditor who has acted in a manner consistent with his ministerial role in arranging for the provision of credit.

Additionally, such a reading of the statute, which itself permits the recovery of punitive damages of $10,000 for each "creditor" who violates its provisions, *see* Va. Code § 59.1-21.23, could well provide plaintiffs with a windfall, as there would almost *never* be less than two "creditors" for any one transaction.  This reading of the statute would also place an unreasonable burden on the employees of creditor corporations who would face the omnipresent threat of individual liability under the Virginia ECOA, even when acting within the scope of employment.  Because the First Amended Complaint does not allege any conduct by Thompson outside the scope of employment, and because Wells Fargo is the creditor, there is no reasonable possibility of a finding of liability against Thompson under the Virginia ECOA.

Furthermore, recognizing the unreasonable impact of such expansive employee liability, the Fourth Circuit has barred individual employee liability in analogous statutory contexts.  For instance, in *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994), the Fourth Circuit was called to decide whether an individual employee was a proper defendant in an Age Discrimination in Employment Act ("ADEA") action.  The court noted that the ADEA defines the term "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . .  The term also means (1) *any agent of such a person*."  *Id.* (citing

29 U.S.C. § 630(b)).  The plaintiff in *Birkbeck* contended that the individual employee was the "agent" of his employer, and that the employee was therefore liable under the statute.  30 F.3d at 510.  The court, however, found that view to be "unpersuasive," holding:

> Such personal liability would place a heavy burden on those who routinely make personnel decisions for enterprises employing twenty or more persons, and we do not read the statute as imposing it.  Instead, we read § 630(b) as an unremarkable expression of respondeat superior--that discriminatory personnel actions taken by an employer's agent may create liability for the employer.  Employer liability ensures that no employee can violate the civil rights laws with impunity, a safeguard that has proven sufficient with respect to Title VII, the ADEA's closest statutory kin.

*Id.* (internal citations omitted); *see also Bryson on Virginia Civil Procedure*, § 5.02(8) (4th ed. 2005) ("An agent having no personal interest in the affairs between his principal and third parties should not be made a party plaintiff or defendants, as a general rule.").

The same policy concerns warrant and indeed necessitate the conclusion that Thompson cannot be liable under the Virginia ECOA, given that his conduct was within the scope of his employment.  Therefore, as demonstrated below, because (even under Plaintiffs' flawed logic) Thompson was at all relevant times acting within the scope of his employment, he is not a proper individual defendant under the Virginia ECOA.

### ii.    There is no reasonable possibility of recovery against Thompson under Plaintiffs' common law claims.

Plaintiffs' common law claims against Thompson fare no better.  First, Plaintiffs' claim for fraud fails for numerous reasons.  Assuming the disputed contention that the First Amended Complaint passes muster under Fed. R. Civ. P. 9(b), Thompson is not alleged to have made any misrepresentation to Plaintiffs and Plaintiffs do not claim to have detrimentally relied on any statement made by Thompson.  *See, e.g., Evaluation Research Corp. v. Alequin*, 247 Va. 143,

148, 439 S.E.2d 387, 390 (1994) ("One who advances a cause of action for actual fraud bears the burden of proving by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.").  Moreover, the fraud claim is predicated on allegations that the Plaintiffs had a "reasonable expectation that credit renewals would continue," – this flies in the face of the Waiver and Amendment Agreement, which expressly required the borrowers to refinance the credit facilities with another lender prior to the expiration or the loan obligations would be payable in full.[4]  These missing elements of actual fraud bar recovery on this claim against Thompson.

These same defects are present with respect to Plaintiffs' claim against Thompson for "equitable estoppel," which requires proof of both misrepresentation and detrimental reliance. *Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 221 Va. 81, 266 S.E.2d 887, 890 (1980) ("A plaintiff asserting equitable estoppel must prove the following elements: (1) A material fact was falsely represented or concealed; (2) The representation or concealment was made with knowledge of the fact; (3) The party to whom the representation was made was ignorant of the truth of the matter; (4) The representation was made with the intention that the other party should act upon it; (5) The other party was induced to act upon it; and (6) The party claiming estoppel was misled to his injury.").  There also can be no reasonable reliance in this

---

[4] Paragraph 17 of the Waiver and Amendment Agreement, titled "Refinance Plan" expressly states the following:

> Obligors shall use their best efforts to cause the Obligations to be refinanced and repaid in full during the Extension Period.  Not later than August 31, 2009, Obligors shall provide Lender with a written plan in detail satisfactory to Lender for obtaining such financing.  Obligors shall provide Lender with an update of such plan on September 30, 2009 and October 30, 2009.  In addition, not later than October 30, 2009, Obligors shall provide Lender with one or more written commitments or term sheets from one or more financed institutions to refinance the entire outstanding balance of the Obligations, not later than December 15, 2009.

*See* Waiver and Amendment Agreement, which is attached as Exhibit 6 to the FAC.

action as a matter of law given the express terms of the Waiver and Amendment Agreement, which unequivocally established a maturity date of January 1, 2010, for the credit facilities and required all obligations to be refinanced and paid in full prior to that date. Moreover, in further negation of any such claim, Plaintiffs do actually allege that "*prior to* Defendant Mr. Thompson taking over as Wachovia's representative the credit facilities were always extended and payments were always made timely or early." (FAC ¶ 53) (emphasis added). Thus, it is evident that Thompson did not contribute to Plaintiffs' averred "expectation" that the credit facilities would be renewed. Indeed, the First Amended Complaint alleges that Thompson treated Plaintiffs with animosity and rudeness. Finally, equitable estoppel also is a defense and not a cause of action. *Monger v. Herring*, 79 Va. Cir. 470, 475 (Rockingham 2009). Hence, no viable claim for equitable estoppel has been pled here.

Additionally, Plaintiffs' claims for negligence and breach of fiduciary duty fail due to the fact that Thompson did not assume any duty towards Plaintiffs through their commercial banking relationship. *See, e.g.*, *Wynn v. Wachovia Bank*, N.A., 2009 U.S. Dist. LEXIS 38250, at *12 (E.D. Va. May 6, 2009) ("There is no common law or statutory support in Virginia which supports the creation of a fiduciary duty between a bank and its debtor/customer when the bank and the customer have a creditor/debtor relationship.") (internal citations omitted). The rights and obligations of Wells Fargo and its corporate borrowers are defined by contract, and not any common law duty of care or fiduciary relationship. *Id.* Any duties owed by Thompson were owed to his employer, Wells Fargo, and not to Plaintiffs.

Finally, the plain language of the credit facilities, and the circumstances surrounding the execution of those credit facilities, belie any contention of "economic duress," assuming that Virginia law even recognizes such a cause of action. *Centech Group, Inc. v. Getronicswang Co.,*

*LLC*, 32 Fed. Appx. 673, 676 (4th Cir. 2002) ("[T]he Revised MOU was the result of armslength discussions between sophisticated corporate parties, and Centech even consulted with its in-house counsel, Grant Moy, before signing the Revised MOU. We find Centech's claim of [economic] duress to be without merit."). The credit facilities were arms length transactions and the various loan contracts are replete with language acknowledging the commercial relationship and that the agreements were negotiated with advice of counsel. The Waiver and Amendment Agreement also expressly provides that any claims relating to the execution of the Waiver and Amendment Agreement are waived. The Waiver and Amendment Agreement was negotiated between the parties and is the governing contract in this matter. These borrowers have no prospect of recovery against Thompson for economic duress.

For these reasons, no viable claim has been stated against Thompson. He therefore has been fraudulently joined to this action and must be dismissed.

**B.** **Plaintiffs have no intent of obtaining a joint judgment against Thompson.**

Plaintiffs have alleged one statutory and five common law claims against Thompson. As set forth above, none of these claims give rise to a reasonable possibility of recovery against Thompson. With regard to all such claims, however, liability (even if possible) would lie either against Wells Fargo or against Wells Fargo and Thompson together, but never against Thompson alone. Accordingly, it is apparent that the sole tactical basis for joining Thompson to this lawsuit was to destroy diversity. For this additional reason, fraudulent joinder is present. *Linnin*, 372 F. Supp. 2d at 825 (even assuming the possibility of liability against an individual employee, the court found fraudulent joinder for naming an employee of the corporation as a defendant).

### i.      Thompson was acting within the scope of his employment.

Plaintiffs contend that the conduct of Thompson "was clearly ultra vires [and] not consistent with the scope of his employment as a senior vice president of the bank."  (Mot. Remand at 5).  In particular, Plaintiffs allege that Thompson engaged in various activities that were outside of the scope of his employment: (1) "offensively" and loudly negotiating with Suthanthiran; (2) refusing to grant or negotiate renewals of the credit facilities to Plaintiffs; (3) somehow requiring Plaintiffs to agree to "onerous and unfair" loan conditions; (4) unreasonably filing the confessed judgments to enforce the terms of the credit facilities; (5) refusing to fairly negotiate loan terms with Plaintiffs; and (6) taking adverse action with respect to the Plaintiffs' loans, notwithstanding their credit worthiness.  (FAC ¶ 45).  The mere utterance of the words "ultra vires" is not sufficient to plead conduct outside the scope of employment.  Plaintiffs' conclusory allegations with respect to scope of employment are entirely unsupported by fact.

"Virginia courts maintain a broad view of the scope of employment."  *Stith v. Thorne*, 488 F. Supp. 2d 534, 552 (E.D. Va. 2007); *see*, *e.g.*, *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1156 (4th Cir. 1997) (applying Virginia law and citing cases).  The test in Virginia to determine whether an act is committed within the scope of employment is: "(1) whether it was expressly or impliedly directed by the employer, or is naturally incident to the business; and (2) whether it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, and did not arise completely from some external, independent, and personal motive on the part of the employee to do the act for his own account."  *Smith v. Landmark Communications, Inc.*, 246 Va. 149, 152, 431 S.E.2d 306 (1993).  The tortious nature of the conduct at issue is not determinative of this inquiry.  *Id.*

In fact, it is settled that even intentional torts may fall within the scope of employment. *See*, *e.g.*, *Plummer v. Center Psychiatrists, Ltd.*, 252 Va. 233, 476 S.E.2d 172 (1996) (psychiatrist who sexually assaulted a patient could have acted within the scope of employment); *Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 249 Va. 39, 48, 453 S.E.2d 261, 266 (1995) ("willful and malicious acts" that were "outrageous and violative of [the] employer's rules" might nonetheless be within the scope of employment); *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1351 (4th Cir. 1995) (under Virginia law, even "a 'forbidden' or 'consciously criminal or tortious' act may still be within the scope of employment.").

Pursuant to these principles, it is evident that Thompson was at all times acting within the scope of his employment.  All of the allegations that allegedly take Thompson's conduct outside of the scope of his employment relate specifically to his enforcement and/or negotiation of the terms of the relevant loans.   (*See* FAC ¶ 45).   This conduct is entirely consistent with Thompson's averred role as a commercial lending officer at Wells Fargo.  (*Id.* ¶¶ 24-26).

Indeed, Plaintiffs' own allegations against Wells Fargo demonstrate the inconsistency of their claim that Thompon's conduct gives rise to individual liability.  Plaintiffs allege that Well Fargo's discrimination against minority borrowers was part of its "established history" of doing business.  (*Id.* ¶ 30).  Therefore, there is no basis to allege that Thompson was acting outside of the scope of his employment when he allegedly enforced such "established" policies against Plaintiffs.  *See*, *e.g.*, *Haigh v. Matsushita Elec. Corp.*, 676 F. Supp. 1332, 1349 (E.D. Va. 1987) ("Although the scheme [to fire the plaintiff due to his age] may have been illegal, it was nonetheless, according to Haigh, devised by Panasonic officials to further Panasonic's interests (*e.g.*, younger sales personnel, reduced liability for pension benefits).  Having so alleged throughout his Complaint, Haigh cannot now assert, in response to the defendants' motion [to

- 15 -

dismiss], that the individual defendants were operating outside the scope of their employment."). Likewise, in the context of a motion to remand, Plaintiffs cannot claim on the one hand that Wells Fargo had a "systemic" and/or specific intent to discriminate against them and, at the same time, accuse Thompson of ultra vires conduct for acting in a discriminatory manner towards the Plaintiffs.

Furthermore, there is no allegation that Thompson benefitted personally from any of the transactions at issue. To the contrary, all of Thompson's challenged conduct was undertaken for the direct financial benefit of Wells Fargo. (*See*, *e.g.*, FAC ¶ 58 ("The bank can now foreclose on a performing loan earning all of its money immediately . . . .")). Therefore, Thompson's alleged conduct was within the scope of his employment. *Smith*, 246 Va. at 152, 431 S.E.2d at 307 (conduct is within the scope of employment if it is incident to the employee's role and done with the "intent to further the employer's interest.").

Because all of Thompson's conduct was performed within the scope of his employment, any liability as to Thompson in this matter will necessarily be co-extensive with the liability of Wells Fargo. For this reason, it is transparent that Plaintiffs have no intention of seeking a joint judgment against Thompson, and that Thompson has been fraudulently joined to this action.

### ii.     Wells Fargo's vicarious liability requires Thompson's dismissal.

As numerous courts have held, "given the relative financial positions of most companies versus their employees, the only time an employee is going to be sued is when it serves a tactical legal purpose, like defeating diversity." *Linnin*, 372 F. Supp. 2d at 824 (quoting *Ayoub v. Baggett*, 820 F. Supp. 298, 300 (S.D. Tex. 1993)). Here, because of the wholly-duplicative liability of Thompson and Wells Fargo, Plaintiffs "have nothing to gain" from joining Thompson as a Defendant in this action "except for defeating diversity." *See Linnin*, 372 F. Supp. 2d at

824; *see also LeBlanc & Ellsworth, Inc. v. Strategic Outsourcing*, 2003 U.S. Dist. LEXIS 13546, at *3 (E.D. La. July 30, 2003) (concluding that fraudulent joinder existed because an employee, whose negligence would be imputed to his employer under the doctrine of respondeat superior, was not necessary to the litigation because the plaintiff had nothing to gain by joining him).

Thus, due to the fact that vicarious liability would be present in this matter, "even if there was a possibility that [Thompson] could be found [liable], Plaintiff has 'no real intention of getting a joint judgment' as to [Thompson] . . . ." *Linnin*, 372 F. Supp. 2d at 824 (citing *AIDS Counseling*, 903 F.2d at 1003).  For this additional reason, fraudulent joinder is present.  *Linnin*, 372 F. Supp. 2d at 824 (dismissing non-diverse employee defendant because "[a]ssuming, for the sake of argument, that Defendant Michielsens could be found negligent in this case, it will be Hertz, the deep-pocket employer, who will ultimately be responsible for any damages under the doctrine of respondeat superior"); *see, e.g., Jones*, 2009 U.S. Dist. LEXIS at *6 (refusing to permit addition of non-diverse defendant because "[i]f Anderson is joined as a party, and found liable for malicious prosecution, it will be [Target], the deep-pocket employer who will ultimately be responsible for any damages."); *Riess Morgan Stanley Dean Witter, Inc.*, 2001 U.S. Dist. LEXIS 17227, at *8-9 (E.D. La. Oct. 15, 2001) (finding fraudulent joinder of individual employees where the court noted that the petition contained no allegations that the employees "personally bound themselves, or acted with respect to plaintiffs other than as agents or representatives of" the corporate defendant).

## II.     Thompson is a nominal party to this action, and his citizenship should not be considered in determining whether diversity jurisdiction is present.

For related but nonetheless independent reasons, in the Court's inquiry into diversity jurisdiction, "nominal" parties that have been joined to the action should be disregarded, and only the "real parties to the controversy" are to be considered in assessing whether complete

diversity of citizenship is present. *See*, *e.g.*, *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980). The Fourth Circuit has not provided a precise standard against which courts can determine "nominal party" status for removal purposes. *Creed v. Virginia*, 596 F. Supp. 2d 930, 933-34 (E.D. Va. 2009). However, in assessing whether a party is merely a nominal party, courts within the Fourth Circuit have considered whether there is any "legal possibility for predicting" that the party could be found liable, *id.* (citing *Allen v. Monsanto Co.*, 396 F. Supp. 2d 728, 733 (S.D. W. Va. 2005)), and they have also asked "whether a court would be able to enter a final judgment favoring the plaintiff in the absence of the purportedly nominal defendant without materially affecting the relief due to the plaintiff." *Creed*, 596 F. Supp. 2d at 935; *accord Blue Mako, Inc. v. Minidis*, 472 F. Supp. 2d 690, 696 (M.D.N.C. 2007).

As demonstrated above, there is no basis to conclude or expect that Thompson will be found liable to Plaintiff with regard to any of the causes of action asserted in the First Amended Complaint. Individual employee liability is not recognized under the Virginia ECOA, and the common law allegations against Thompson are devoid of any basis in either law or fact. Hence, Thompson is a nominal party to this action.

Moreover, it is well settled that "[n]on-diverse parties whose presence is not essential . . . may be dropped to achieve diversity between the plaintiffs and the defendants." *Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683, 691 (4th Cir. 1978). When considering whether the dismissal of a non-diverse party would materially affect the relief available to the remaining parties, it is settled that a non-diverse employee of a diverse employer who was acting within the scope of his employment is not an indispensable party to an action. *Linnin*, 372 F. Supp. 2d at 826 (dismissing employee defendant as dispensable due to vicarious liability of employer); *see*, *e.g.*, *Janeau v. Pitman Mfg. Co., Inc.*, 1991 U.S. Dist. LEXIS 19322, at *6 (W.D.N.C. Oct. 25,

1991) (a non-diverse party with "like liability" is not indispensable).  "This rule, of course, is a sensible one, as it recognizes that a party could not be considered indispensable if it is not necessary for the plaintiff to sue that party in order to recover."  *Linnin*, 372 F. Supp. 2d at 826.

As demonstrated above, Thompson was at all relevant times acting within the scope of his employment.  The true creditor to the Plaintiffs is Wells Fargo, who can satisfy any judgment against itself and its agent.  Therefore, Thompson is not an indispensible party to this action. *Creed,* 596 F. Supp. 2d at 935.  Rather, he is at most a nominal party whose citizenship should be ignored by the Court for the purpose of assessing diversity jurisdiction.

## CONCLUSION

WHEREFORE, Defendants, Wells Fargo Bank, N.A. and J. Kent Thompson, respectfully request the Court to deny Plaintiffs' Motion for Remand.

**WELLS FARGO BANK, N.A.**

**and**

**J. KENT THOMPSON**

/s/ Mary C. Zinsner
Mary Catherine Zinsner (VSB No. 31397)
mary.zinsner@troutmansanders.com
S. Mohsin Reza (VSB No. 75347)
mohsin.reza@troutmansanders.com
TROUTMAN SANDERS LLP
1660 International Drive, Suite 600
McLean, VA  22102-3805
Telephone:  703-734-4334
Facsimile:  703-734-4340

Jon S. Hubbard (VSB No. 71089)
jon.hubbard@troutmansanders.com
Timothy J. St. George (VSB No. 77349)
tim.stgeorge@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
P.O. Box 1122

Richmond, Virginia 23218-1122
Telephone: (804) 697-1406
Facsimile: (804) 698-5186

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of October, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system.  I further certify that on the 7th day of October, 2010, I will send the foregoing by hand delivery to the following:

Shawn R. Weingast, Esq.
James Brady, Esq.
7643 Fullerton Road
Springfield, VA 22153
Tel:  703-451-2378
sweingast@teambest.com
*Counsel for Plaintiffs*

/s/ Mary C. Zinsner
Mary Catherine Zinsner (VSB No. 31397)
mary.zinsner@troutmansanders.com
S. Mohsin Reza (VSB No. 75347)
mohsin.reza@troutmansanders.com
TROUTMAN SANDERS LLP
1660 International Drive, Suite 600
McLean, VA  22102-3805
Telephone:  703-734-4334
Facsimile:  703-734-4340

*Counsel for Defendants*

430543v1